### Walsh vs. Frank.

Whenever it is the duty of the shipper of goods to insure them, and he neglects to do so, and they are lost by the sinking of the boat before reaching their destination, the law merchant makes him liable to the extent of the purchaser's loss.

Whether it is the duty of a shipper to insure goods, without an order to do so, depends upon the general custom of merchants, unless there be a special custom, different from the general one, at the place of shipment, known to the purchaser; in which case, the parties will be presumed to contract in reference to the special custom.

When a special custom, at the place of shipment, different from the general custom, is proved: and the question is, whether the purchaser had knowledge of the special custom, and contracted in reference to it, the previous course of dealing between the same parties—such as the order, shipment and receipt of several invoices of goods, without any charge for insurance—is sufficient evidence from which the jury may infer knowledge of the special custom.

An instruction as to the general custom of merchants upon the Mississippi and its
tributaries, when the evidence before the jury was as to the custom of the merchants
of three only of the important commercial cities within the district of country de-
signated, held erroneous.

*Error to the Circuit Court of Chicot county.*

The Hon. THEODORIC F. SORRELLS, Circuit Judge.

FOWLER & STILLWELL for the plaintiff.

CUMMINS & GARLAND, for the defendant.

If the general custom was proven by the evidence and the
jury so found, plaintiff was in effect insurer of goods, and on
loss was liable to defendant therefor. 13 *Ark.* 461 *and cases
cited.*

The general custom was proven and could well have been
proven, and verdict cannot be disturbed, 1 *Hall* 84; 13 *Ark.*
236, 295; 15 *Ark.* 403; 14 *Ark.* 706.

The instructions all taken together were proper, and cer-
tainly not unfavorable to plaintiff. 1 *S. Pl. & Ev.* 398; 2
*Sumn.* 377; 10 *Shep.* 90; 7 *Ala.* 335; 1 *Spears* 249, 321; 16 *Ohio*
421.

The special custom could not prevail, unless a knowledge of
it came to defendant. 2 *Wend.* 501; 5 *Pick.* 15; 4 *Gill & J.*
274; 9 *Pick.* 198.

Mr. Justice SCOTT, delivered the opinion of the Court.

This was an action of assumpsit, to recover the amount of a
shipment of goods from the plaintiff, a merchant of the city of
St. Louis, Mo., to the defendant, a merchant of Arkansas. It
was admitted that the defendant ordered the goods, and that
they were shipped upon a steamboat, and bill of lading sent as
usual, with usual advices of shipment, and that the goods were
lost, by the sinking of the boat, in the Mississippi river, before
reaching their destination.

The point of contest was, whether the plaintiff ought to have insured the goods. It was admitted that he was not specially ordered to do so, but insisted on the part of the defendant that it was, nevertheless, his duty. If it was the plaintiff's duty, under the circumstances of the case, to insure, the law merchant makes him liable, upon its neglect, to the extent of the defendant's loss—in effect, he becomes himself the insurer of the goods. And hence, the plaintiff's right to recover from the defendant, the invoice price of the goods, is compensated by the defendant's right to recover from the plaintiff, damages to the amount of his, the defendant's loss, and of course, the plaintiff fails in his action.

Upon the evidence, and under the instructions of the Court, the jury found for the defendant, and the Court rendered judgment accordingly. The plaintiff moved for a new trial, merely upon the ground that the Court had misdirected the jury in so much of the instructions as were asked for on the part of the defendant, and given by the Court, over the objection of the plaintiff made at that time. But the Court overruled this motion, and the defendant excepting, saved in his bill of exceptions all the instructions given by the Court to the jury, and all the evidence produced on the trial of the cause, and brought his case here by writ of error.

The proof was, that the defendant had, twelve different times, ordered goods from the plaintiff, that had been shipped to him accordingly, and gone safely to their destination; that he had never ordered any of them to be insured; that he had never been charged anything for insurance, had never paid anything therefor, and in fact, none of these shipments had ever been insured. That he had paid the plaintiff for all these several shipments except for the last one, which was then in litigation, and that these transactions had spread through the space of several years. It was proven by two witnesses, who had full knowledge of the course of trade in the city of St. Louis, and resided there, that it was the custom of the merchants of that city not to insure goods ordered to be shipped, unless specially

instructed to do so, but that if once instructed to do so by a customer, to continue to do so, as to his subsequent orders, without further instructions. And also, that by the custom of merchants in that city, when there was no insurance ordered, the delivery of the goods to the steamboat was a delivery to the defendant.

A planter of Arkansas, however, testified that he had once purchased some plantation supplies in St. Louis, and gave no instructions as to insurance, but that he was nevertheless charged with insurance in the bill rendered him, and that he *believed* " it was the custom in New Orleans and Louisville and other western cities to charge insurance without any order therefor, so far as he had any knowledge." The witness did not state upon what his *belief* was founded. It was also proven by a witness, on cross-examination, that " most of the shipments made to the defendant, by merchants in other cities than St. Louis, *to wit*: New Orleans, Cincinnati, Louisville and several eastern cities, were charged with insurance; . . . . . and that he had been a clerk in stores, and acquainted with mercantile business for about twenty-two years, and that it was usual in all cities, with whose usage he was acquainted, to effect insurance; but he did not know what the usage was in St. Louis as to the point." He did not state with what cities he was acquainted with their usage in question, further than above stated.

Upon this evidence, the Court, at the instance of the plaintiff, instructed the jury as follows, *to wit:*

" 1st. If the jury believe from the evidence, that said defendant ordered said plaintiff to ship them said goods, wares and merchandize, and did not request them to insure the same, and by the custom of the place or trade among merchants, where the same were purchased, it was not usual to insure goods shipped on steamboats, unless ordered by the purchaser to do so; and if they believe that said plaintiff did ship said goods on board said steamer, and on the voyage said goods were lost or damaged by the sinking of said boat, the loss falls on said defendant; and they must find for the plaintiff.

" 2dly. If the jury believe from the evidence, that said defendant ordered or purchased from said plaintiff said bill of goods, and ordered them to be shipped etc., and that they were shipped, etc., and that there was no request by the defendant to have them insured, and by the custom and usage of merchants, at the place where the goods were shipped and purchased, the delivery of the goods to the steamboat was a delivery to the defendant, the goods were at the risk of the defendant; and whether they safely reached their destination, or not, they must find for the plaintiff."

The Court then, at the instance of the defendant, and over the objection of the plaintiff, at that time expressly made, further instructed the jury, as follows, *to wit:*

" 1st. If the general custom upon the Mississippi and tributaries is shown to be, to insure in all cases upon shipments made to customers by merchants, this custom must prevail—the presumption being against a special custom different from the general one.

" *2dly.* If the general custom is proven as above supposed, plaintiff cannot recover if they shipped the goods without effecting insurance, and the defendant never received the goods.

" *3dly.* The mere fact, that the invoices were not charged with insurance, is not sufficient to overturn the general custom, which is the law of the case in the absence of proof that the defendant not only knew of, but assented to, the prevalent custom."

As to the first of these instructions given upon the part of the defendant, it is to be remarked that it has a much greater scope than any evidence in the record, because it expressly contemplates the general custom of merchants upon the *Mississippi* and its *tributaries*, as to the point of contest; while as to the Mississippi and its tributaries, there is nothing in the evidence that goes beyond *New Orleans, Cincinnati* and *Louisville*, except to the mere " belief" of a planter of Arkansas,

" so far as he had any knowledge " as to " other western cities."

New Orleans, Cincinnati and Louisville, as we judicially know, are only three of a great number of cities and towns within the vast region of country drained by the Mississippi and its tributaries, and although the custom of the merchants of these three important commercial cities, as to the point in contest, would be an element in ascertaining a general custom touching the matter, prevalent among the merchants of this vast region, it by no means would, *in itself*, prove such general custom. It might be, for aught that appears in the record to the contrary, that if the custom in all the other cities and towns, within this vast region, was known, that in these three alone of them all, the supposed general custom prevailed. And this instruction is open to the further observation, that even upon the supposition that there was sufficient evidence in the record to support it, it would be calculated to confuse and mislead the jury unless they had been informed in connexion with it, that they were to consider whether there was sufficient evidence to authorize them to believe that a custom different from the general one prevailed in St. Louis, and whether the dealings in evidence between the parties had afforded reasonable ground to believe that this latter custom had become known to the defendant; and if so, then, in contemplation of law, they would be bound to presume that the parties had contracted together in reference to the special custom and not to the general one; the presumption otherwise in favor of the latter, being by this means repelled.

So the second instruction was even more calculated to mislead the jury, on the same supposition, unless qualified in like manner.

The third was still more objectionable, because it cut off from the jury legitimate inferences, (which they had a right to draw from the fact in evidence, that insurance had not been charged on any of the previous twelve invoices furnished by the plaintiff to the defendant,) as to the knowledge of the de-

fendant, of the special custom in question of St. Louis. The Court tells the jury that the general custom is the law of the case, unless there was a different special custom at St. Louis, that was *known* to the defendant; and then in substance, that an obvious means of this *knowledge, to wit:* The previous course of dealing between the parties as to insurance, was insufficient for an inference of this knowledge to be drawn by the jury.

This instruction, in the language in which it was given, approached very nearly to an instruction that a knowledge of a special custom different from a general one, was to be proven otherwise than by the previous course of dealing between the parties, and could not be inferred from such course of dealing. We know of no law to that effect, and if there was none, so to instruct was to invade the province of the jury as to the facts of the case.

We have thus spoken of these instructions in detail. When considered in gross, they are so inconsistent with those given on the part of the plaintiff as to amount almost to a virtual withdrawal of them. The skill of eminent counsel, however, exerted with deliberation, often produces such results before the most able Courts, proceeding in the hurry of *nisi prius* session.

The true point of inquiry, upon which this case turned, was whether, according to the contract between the parties, it was the duty of the plaintiff to insure the goods. If it was his duty, it was so because it was thus stipulated in the contract. It is perhaps seldom, if ever, that every stipulation of any contract is expressed in terms. When men speak, or act, it is, perhaps, always in reference to something not said, or something not done, that is, nevertheless, inseparably connected with what was said or done, so as to make the matter not said, or the matter not done, as emphatically a part of that, that *was* said or done, as if *it*, also, had been said or done. It was upon this all pervading principle, that any inquiry at all, as to customs, general or special, was legitimate. This inquiry proposed to ascer-

tain whether the plaintiff contracted to insure the goods, by ascertaining what was the custom of the place, as to this, where the goods were bought, and if this was mutually known to the parties. When this was ascertained, the inference is legitimate, that the parties contracted in reference to this custom: In other words, that that custom was one of the stipulations of their contract, as obligatory as any other of its stipulations that might have been more emphatically expressed, either by a word, or an act. An inquiry as to what may have been a custom in England or France, as to the thing done or said, could throw no light on the point of inquiry, because it could not be supposed that the parties contracted in reference to such matters.

A general trader must be presumed to know the general course and customs of the trade in which he is engaged, and must equally be presumed to know any exceptions to this general course of trade and these general customs, whenever it appears that he had fair and legitimate means of knowing such exceptions. Even, then, supposing, that in this instance the general course was to insure without instructions, it would seem fairly inferable from the testimony, that when that course was pursued the item of insurance would appear in the invoices.

When, then, as in the course of dealings between these parties, as shown by the testimony, that item did not appear in any of the twelve invoices previously sent forward and settled for, a trader's attention could but have been attracted to such a fact, so often before his eyes, and would have legitimately put him upon inquiry as an honest man. Because, if he had supposed that the goods had been insured, he knew he had not paid for the insurance. And it is incredible that such a thing could have escaped an honest man's attention for a dozen consecutive times. The commercial code is one of fair dealing and high moral tone, and cannot brook that one should lie by and claim the benefit of ignorance of a matter of which the course of dealings between him and another would legitimately superinduce inquiry and knowledge.

We think the Court below erred in refusing the motion for a new trial. We shall, therefore, reverse the judgment and remand the cause to be proceeded in according to law, and not inconsistent with this opinion.

Absent, Mr. Justice HANLY.