BRANCH *v.* MOORE.

Opinion delivered November 25, 1907.

1. FACTORS AND BROKERS—RIGHT TO COMMISSIONS.—Where plaintiff, a real estate broker employed by defendant to sell a tract of land, introduced a prospective buyer to defendant, and defendant thereafter revoked plaintiff's authority to sell, upon a representation that he had decided not to sell, but within a few days defendant sold the land to the person introduced to him by plaintiff, defendant is liable for plaintiff's commission. (Page 465.)

2. SAME—REVOCATION OF AGENCY.—While an agency to sell real estate may be revoked at any time before the sale, such revocation must be in good faith, and not for the purpose of depriving the agent of his compensation after appropriating his services. (Page 466.)

3. SAME—DEFENSE.—In an action by a broker to recover compensation
for effecting a sale of defendant's land, it was no defense that the land
constituted defendant's homestead, and that he could not lawfully
sell the land without his wife's consent, as plaintiff was not seeking
to enforce a contract to sell land, but to recover compensation for
services rendered. (Page 466.)

Appeal from Howard Circuit Court; *W. V. Tompkins,*
Special Judge; affirmed.

*Sain & Sain* and *W. C. Rodgers,* for appellant.

1. A married man can not contract with a broker to sell
his homestead unless his wife joins in the contract. Kirby's
Digest, § 3901; 60 Ark. 269. Appellee will be held to have
contracted with reference to the law existing at the time of
the contract. 95 S. W. 481; 73 Ark. 470; 75 Ark. 435; 76
Ark. 410; 80 Ark. 108; 177 U. S. 28; 83 U. S. 310,
The contract to sell being void under the law, no rights could
arise thereunder in favor of appellee. 49 Kan. 777; 66 Ia.
666; 42 Ia. 296; 55 Minn. 244; 108 N. W. 544.

2. The authority conferred upon appellee to sell was rev-
ocable at the will of appellant. 8 Wheat. 174; 46 Pa. St. 426;
43 *Id.* 212; 4 Conn. 119; 53 Pa. St. 266; 64 Ind. 548; 88 Fed.
709; 129 N. C. 403; 158 Ill. 428; 8 Col. 592; 2 Camp. 339; 66
L. R. A. 982; Clark & Skyles, Agency, § 157.

3. The contract vested in appellee no interest in the land.
Where it is agreed that the broker may retain all over a certain
amount he may sell the land for, such agreement conveys
to him no interest in the land. 6 Conn. 559; 32 Cal. 609;
88 Mo. 297; 53 Pa. St. 212; 64 Ill. 548.

4. Appellee could not hold the land at a higher price than
the purchaser was willing to pay and then claim commission.
103 Ala. 641.

*J. S. Lake* and *W. P. Feazel,* for appellee.

1. The contract between the owner and the broker in no
wise affected the homestead, and it was not necessary that the
wife join therein. Moreover; appellant, having accepted the
benefit of appellee's services, can not repudiate his obligations.
64 Ark. 357; 4 Am. & Eng. Enc. of L. 975.

2. The owner can not revoke his contract with a broker without compensation for services already performed. Where no time limit is fixed in the contract, and the agent has brought the owner and purchaser together, and has placed the transaction in such condition that success is practically certain, revocation will not defeat him of his commission, even though the sale is made by the owner himself. 89 Cal. 251; 2 Wash. 34; 53 Ark. 49; 23 Fla. 203; 76 Cal. 60; 81 Ark. 96; 4 Am. & Eng. Enc. of L. 979 (b), 981.

Battle, J. J. H. Moore brought this action against M. Branch to recover compensation alleged to be due him on account of a sale of land made by him for the defendant, who answers and alleges that plaintiff's authority to sell the land was revoked by him before the sale, and that the plaintiff was not entitled to any compensation. The facts in the case, as shown by the evidence adduced in the trial, are substantially as follows: "The defendant owned a farm in Howard County, in this State, which constituted his homestead, and placed it in the hands of plaintiff, a real estate agent, for sale, agreeing to accept for the same the sum of $2,000 net, and to allow plaintiff to hold as compensation all for which he shall sell above that sum. Plaintiff immediately thereafter entered into negotiation with D. C. Irvin for the sale of the farm, took him to it and over it, and offered to sell it to him for $2,250, and introduced him to defendant, they being strangers before that time. Irvin said the price was too much, but expressed himself pleased with the farm, and promised to return in a day or two to further examine it. Plaintiff says that he offered it to him for $2,200, but Irvin says that he does not remember it. Plaintiff testified that in a day or two after this defendant said to him: 'You needn't put yourself to any further trouble to sell my place. I don't want to sell it now, and my wife won't sign a deed.' I said: 'All right, Uncle Mike.'" Irvin testified: "I do not know why he (defendant) claimed to have taken the land out of Mr. Moore's hands except what he said. He said his wife wouldn't sign it—the bond for title." The defendant testified: "Mr. Moore did not do anything towards selling except bring Mr. Irvin out there to look at the place. The next

morning I went back and asked Mr. Moore what he had done. He told me that he had not done anything; that the price was too high. I said: 'That is all right. I am glad of it. My wife said she wouldn't sign the deed if I sold it for $2,000.' Mr. Moore said: 'All right; I will have nothing more to do with it.' I did not have any more negotiations with him about selling the land. I told him he could drop his part and have nothing to do with the land. He said: 'All right.'" In about four days thereafter he sold the land to Irvin for $2,200. All these transactions occurred in the year 1906. Plaintiff testified that the land was in his hands during that year several times at different prices. "When he first put it in my hands, I think he said he wanted $1,400 net. This was sometime in the early part of the year 1906. He went from $1,400 to $2,000 net." This is not contradicted.

Upon these facts and evidence the court instructed the jury as follows:

"1. If you believe from the evidence that the defendant placed his land in the hands of J. H. Moore for sale, agreeing to allow him all in excess of $2,000 he sold the land for, as his compensation, and if you further believe that the plaintiff, Moore, carried the purchaser to the owner of the land and showed and priced same to him, and introduced him to the owner, and through such introduction and exertions on the part of Moore negotiations were begun between the purchaser and the owner of the land and a sale thereof was made by the owner of the land for the sum of $2,200, then Moore would be the procuring cause of said sale, and would be entitled to recover of the defendant all in excess of $2,000 said land sold for, unless you further believe that the agency was terminated in good faith before the sale.

"2. If you believe from the evidence that the defendant employed plaintiff to sell his land, and agreed to pay him therefor all in excess of $2,000 he sold the land for, defendant would not be relieved from said contract by the fact that his wife refused to sign the deed for $2,000.

"3. The court instructs the jury that, although you may believe from the evidence that Moore consented to the with-

drawal of the land from sale, still he would not be bound by such assent if it was procured through a misrepresentation on the part of Branch that Branch's wife would not sign the deed.

"4. Although Moore may have agreed with Branch that he would make no further effort or go to no further trouble to sell his land, this would not affect his right to recover in this action if the sale was the result of, or was brought about by, the previous efforts of Moore.

"5. You are instructed that if you find from the evidence that the plaintiff procured a purchaser, introduced him to the defendant, and that he, the plaintiff, was the procuring cause of the sale, then the defendant could not withdraw his land from the hands of the plaintiff and defeat the collection of the commission unless the contract between plaintiff and defendant was by mutual assent abrogated with a full understanding of all the facts."

The defendant asked the court to instruct the jury as follows: "(2) The jury are instructed that the contract in controversy could be terminated by an oral agreement between the parties. So, if you find from the evidence that the contract was verbally terminated by mutual consent, you will find for the defendant, Branch." But the court refused to give it, but amended it, and gave it as amended, as follows: "(2) The jury are instructed that the contract in controversy could be terminated by an oral agreement between the parties. So, if you find from the evidence that the contract was verbally terminated by mutual consent, with a full understanding of all the facts, your verdict should be for the defendant."

He also asked, and the court refused to give, the following instruction: "(4) The jury are instructed that the defendant, Branch, had a right to revoke the contract made with Moore for the sale of his land, and that this could be done without the surrender of the written contract." But amended it by adding the words: "But this could not be done if you believe from the evidence that Moore had procured a purchaser under the terms of his agreement;" and gave it as amended.

And the court refused to instruct the jury at the request of the defendant as follows: "(6) If the jury finds from the

evidence that Moore refused to make a sale for less than $2,250, and that Irvin refused to give this much, he would not be entitled to recover any commission, notwithstanding Branch sold the place for $2,200.

"(9)   The court instructs the jury that if the plaintiff, by his words or acts, induced the defendant, Branch, to act with reference to the sale of the land otherwise than he would have done but for such acts or words on the part of the plaintiff, and thereby make a sale of the land direct and without regard to the intervention of the plaintiff, Moore; that is, if the plaintiff induced the defendant to believe that the relations between himself and Moore were terminated, and Branch acted upon such belief in making the sale direct, the plaintiff would not be entitled to recover anything.

"(10)   The jury are instructed that the authority to sell conferred on Moore by the contract in controversy can be revoked at any time before a valid and binding contract for the sale of the land by the broker has been consummated."

Plaintiff recovered judgment for $200, and the defendant appealed.

The facts in *Scott* v. *Patterson*, 53 Ark. 49, and those in this case are similar.   In that case the real estate broker said to the owner of the land that he had done all he could to sell the land to the prospective purchaser, and that he was unable to do so, and that he "turned her (prospective purchaser) over" to the owner; that he might sell her the land if he could.   The owner finally made the sale.   He testified that he had nothing to do with selling the property until the brokers declined to have anything more to do with it.   In that case the court, quoting from *Tyler* v. *Parr*, 52 Mo. 249, said:   "The law is well settled that in a suit by a real estate agent for the amount of his commissions it is immaterial that the owner sold the property and concluded the bargain.   If, after the property is placed in agent's hands, the sale is brought about or procured by his advertisements and exertions, he will be entitled to his commissions.   Or, if the agent introduces the purchaser or discloses his name to the owner, and through such introduction or disclosure negotiations are begun, and the sale of the property is effected,

the agent is, entitled to his commission, though the sale may be made by the owner."

In *Hunton* v. *Marshall*, 76 Ark. 375, it was held that "a broker who has been employed to sell real estate is entitled to his commissions where he has brought about between his principal and another negotiations which resulted in a sale, which was consummated by the principal."

If there had been no attempt to revoke the agency of appellee, he would unquestionably have been entitled to his commissions. He was authorized to sell the land for any sum exceeding $2,000, appellant agreeing to allow him as compensation for his services all received in excess of that amount. He found a purchaser, took him to the land, introduced him to appellant, they being strangers to each other, showed him the land, offered it to him for $2,250; the purchaser said the price was too high, but expressed himself as pleased with the land and promised to return and look at it again. Negotiations were approaching success, when appellant informed appellee that he need not make any further effort to sell the land, giving as a reason for reserving it from sale that his wife would not joint him in executing a deed. In about four days thereafter he continued the negotiations already begun and sold the land to the purchaser found by appellee for $2,200. The jury could have reasonably concluded from the undisputed evidence in the case that the appellee was induced by fraud to desist from the prosecution of his negotiations and finally concluded a sale. If so, he was entitled to the stipulated commissions. The mere refusal of the wife of apppellant to join in the execution of the deed would not deprive him of them if the sale was made and the purchase money received, and all of this was "the result of, or was brought about by, his previous efforts."

Appellant contends that he had the right to revoke the agency of appellee at any time before the sale. This is true, if done in good faith. But he could not do so for the purpose of depriving him of his reward and appropriating his services without compensation. He could not make the revocation a pretext for defrauding appellee. *Blumenthal* v. *Goodall*, 89 Cal. 251.

The court properly refused to instruct the jury as asked

by appellant in his ninth request.  He asked the court to instruct the jury "that if the plaintiff, by his word or acts, induced the defendant, Branch, to act with reference to the sale of the land otherwise than he would have done but for such acts or words on the part of the plaintiff, and thereby make a sale of the land direct and without regard to the intervention of the plaintiff, Moore; that is, if the plaintiff induced the defendant to believe that the relations between himself and Moore were terminated, and Branch acted upon such belief in making the sale direct, the plaintiff would not be entitled to recover anything."  He asked the court to so instruct the jury, regardless of the acts, words, and conduct of himself that induced the words or acts of appellee mentioned in the ninth request.  There was evidence to show that such was the case.  If so, they did not excuse, justify, or extenuate his own acts and words.  He could not take advantage of his own fraud in misleading appellee.

Appellant contends that the land constituted his homestead, and he could not lawfully authorize the appellee to sell it without his wife joining him in executing an instrument for that purpose, but this contention is not tenable. Appellee is not seeking to enforce any contract to sell or convey the land, or any lien thereon.  The land has been sold.  No party is seeking to avoid the sale.  Appellee is asking only for compensation for services rendered.

The instructions given by the court, construed as a whole and read in the light of the evidence, contained no prejudicial error.

Judgment affirmed.