## MOORE v. IRWIN.

Opinion delivered February 8, 1909.

1. REAL ESTATE BROKER—WHEN COMMISSION EARNED.—A broker who undertakes merely to furnish a purchaser for land earns his commission when he procures a purchaser who is accepted by his principal and who enters into a valid contract with him for sale of the land,

even though the sale is never in fact·consummated by reason of the failure of the purchaser to perform his part of the contract. (Page 293.)

2.  SAME—Where a broker, in pursuance of his undertaking to furnish a purchaser of land, presents a purchaser who is accepted by his principal, he becomes entitled to his commission when a binding contract is entered into, and his principal cannot escape liability by proving that the proposed purchaser was not financially responsible. (Page 294.)

Appeal from Howard Circuit Court; *James S. Steel,* judge; reversed.

### STATEMENT BY THE COURT.

Appellee and appellant entered into a contract whereby the latter, who was a real estate broker, should have the exclusive sale, for the former, of a certain tract of land on certain terms. Appellee was to give appellant "in consideration of his services in making a sale or transfer," sending appellee "a buyer, or being instrumental in any manner whatever in selling or transferring the property," a certain per cent. commission to be paid "out of the first money collected." No change in the price or terms of sale made by appellee should work a forfeiture of appellant's commission.

Appellee entered into a contract with one Humphries for the sale of the land. Humphries paid to appellee two hundred dollars on the purchase money, and executed his note for the balance, payable at a future date. Time was of the essence of the contract of sale, and in the event of a failure to pay or perform other conditions named "strictly and literally" all the rights of the purchaser ceased. In case of default to comply with the condition as to payment, the relation of landlord and tenant was to exist from the first of January preceding to the date of the default. Upon compliance with the conditions by Humphries, appellee was to make him a warranty deed to the land. Appellee testified that when the two hundred dollars was paid him by Humphries appellant demanded his commission. Appellee told him that "if he thought the other (money) was safe and all right he could have his commission." He said it would be perfectly all right; that he had arranged to borrow the money for Mr. Humphries; that all Humphries would have to do was to sign a mortgage.

Appellee says he let appellant have the $50, which he "would not have done without this representation." Appellee further testified that he "accepted this Humphries contract and signed this agreement under defendant's [appellant's] judgment," that "his representations caused plaintiff [appellee] to believe that it was all right." The testimony of appellant tended to show that he had made a contract to sell appellee's place to one Barefield for cash, that the trade was not closed on account of the sale by appellee to Humphries; that appellee and Humphries had reached an agreement as to the terms of payment, and he (appellant) wrote the contract for them; that when Humphries paid appellee the two hundred dollars and appellant received the $150 commission, his contract with appellee terminated. Appellant denied that the commission was paid him upon the understanding that the balance of the purchase money would be paid by Humphries; also denied that he had represented to appellee "that Humphries was all right;" said that he knew nothing of Humphries's financial standing, and that he did not guaranty appellee that Humphries would pay for the place. There was nothing to show that the farm was not worth the money that Humphries agreed to pay for it. This suit was begun by appellee in a justice's court against appellant to recover the $150. Appellee, among other things, alleged that appellant sold the land to Humphries, and that appellee allowed appellant to take the sum of $150 as his commission, relying upon appellant's representation that Humphries was able to and would consummate the purchase, that Humphries had failed to do so, and that he was insolvent, and therefore appellant had not earned the commission. Appellant denied orally all the material allegations of the complaint. The testimony at the trial developed substantially the above facts.

The court, at the request of appellee, in effect instructed the jury that appellant, under the contract with appellee would not be entitled to any compensation for his services in procuring a purchaser unless there was a consummation of the contract of purchase made by such purchaser with the appellee, *i. e.*, unless the purchase money was paid by the purchaser and the title transferred to him. The court further instructed the jury that if appellant made the representation to appellee that Humphries

would perform his contract of purchase, and if appellee acted upon such representation in paying over the money in suit to appellant, in such case, if Humphries failed to perform his contract, appellee should recover.

The following instructions asked by appellant were modified by inserting the words in italics.

"2.   The court instructs the jury that if they believe from the evidence that the plaintiff, Irwin, employed the defendant, Moore, to sell his farm for him at a designated price, and the defendant procured a purchaser who was willing and ready, *acceptable to Irwin relying upon his own judgment,* to purchase upon the terms of plaintiff, and who did enter into a written contract with plaintiff, expressing the terms of the sale, defendant, Moore, was then entitled to his commission, although the purchaser may afterwards refuse to perform his part of the contract without any fault on the part of the plaintiff, and your verdict will be for defendant."

"3.   The court instructs the jury that if they believe from the evidence that the plaintiff, Irwin, employed the defendant, Moore, to sell his farm for him, under written contract, whereby defendant's commissions were to be paid out of the first money paid by the purchaser, and the defendant did procure a purchaser who made a cash payment and then entered into a written agreement with the plaintiff for the purchase of his farm, and that plaintiff paid the defendant his commission and took up the option given the defendant for the sale of said land, your verdict will be for the defendant, *provided Irwin relied upon his own judgment as to the ability of the purchaser to comply with his contract of purchase.*"

The appellant saved his exceptions to the modifications, and to the giving of the instructions as modified.   A verdict was returned in favor of plaintiff for the sum of $150, and judgment was entered accordingly.

A motion for new trial assigning as error the rulings to which exceptions were saved, and further that the verdict was contrary to the evidence, was made and overruled.   This appeal was duly prosecuted.

*Sain & Sain* and *T. D. Crawford,* for appellant.

When a person, without mistake of fact, duress, coercion,

or extortion, pays money on a demand which is not enforceable against him, the payment is deemed voluntary, and cannot be recovered.    72 Ark. 555; 73 *Id.* 565; 49 *Id.* 70.    The employment of a broker to sell a tract of land constitutes a special agency, and when a sale is made the only purpose of the agency is accomplished.    55 Ark. 576.    When the principal accepts the person presented to him by his broker, and enters into an enforceable contract with him, the broker's commission is earned. 45 Minn. 83; 70 Tex. 739; 84 Ill. App. 604; 83 *Id.* 139; 107 Mass. 550; 13 Bush 358; 78 Ia. 459; 21 Barb. 145; 35 N. Y. Super. 548; 205 Pa. 234; 53 Ind. 294; 21 Am. R. 192; 16 Colo. 271; 25 Am. St. R. 265; 19 Colo. 38; 72 App. Div. 418; 189 Pa. 472; 132 N. Y. 1; 28 Am. St. R. 542; 137 N. Y. 504; 120 Mass. 53; 22 Ind. App. 475; 40 Ill. App. 198; 148 Mass. 518; 12 Am. St. R. 587.

*W. C. Feazel* and *W. C. Rodgers,* for appellee.

The rights of litigating parties should not be adjudicated upon issues not raised in the court below.    47 Ark. 96; 81 *Id.* 476; 83 *Id.* 574.    Willingness on the part of purchaser is not sufficient; he must be able to buy.    116 Ala. 395; 22 So. 540; 57 N. J. L. 420; 31 Atl. 390.

WOOD, J., (after stating the facts.)    The parties, as indicated by the requests for instructions, treated appellant as the procuring cause of the contract betwen appellee and Humphries as to the sale of the land.    But appellee contends that appellant was not entitled to his commission under the contract with appellee until the executory contract of sale and purchase had been completed by the payment of the purchase money and the transfer of the title.    He also contends that he paid the commission to appellant, relying upon certain representations made by him, which were not true, and were not carried out by appellant, and therefore (appellee) was entitled to recover the commission. Appellant, on the other hand, contended that he was entitled to his commission as soon as he had procured a purchaser who entered into the contract for the purchase of the land upon the terms expressed therein as prescribed by appellee and who paid a part of the purchase money.

In *Rice* v. *Mayo,* 107 Mass. 550, it is held that:   "A written contract for the purchase of an estate, binding both ven-

dor and purchaser, is a sale within the meaning of an agree-
ment to pay a commission to a broker upon sale of the estate."
In note to *Lunney* v. *Healey,* 44 L. R. A. 593, it is said: "The
business of a real estate broker or agent is only to find a pur-
chaser, and the settled rule as stated by the courts is that, in
the absence of an express contract between the broker and his
principal, the implication generally is that the broker becomes en-
titled to the usual commission whenever he brings to his prin-
cipal a party who is able and willing to take the property and
enter into a valid contract upon the terms then named by the
principal, although the particulars may be arranged and the
matter negotiated and completed between the principal and pur-
chaser directly." In *Pinkerton* v. *Hudson,* 87 Ark. 506, we
quoted the above and the syllabus, that "where a real es-
tate broker contracts to produce a purchaser who shall actually
buy, he has performed his contract by the production of one
financially able, and with whom the owner actually makes an
enforceable contract of sale. The failure to carry out that con-
tract, even if the default be that of the pu. :haser, does not de-
prive the broker of his right to commissions."

Appellee relies upon this case to sustain his contention that
the broker must present a purchaser financially able to carry
out his contract of purchase. But the question here did not
arise in that case, nor in any case (and they are numerous)
where the financial ability of the purchaser is not questioned.
In the absence of an express contract by which the broker war-
rants the financial ability of the purchaser procured by him,
or in the absence of fraud on his part, he does not lose his
commission, where a binding contract of sale is effected through
his agency, because the purchaser procured by him is financially
unable, or for any other reason fails to carry out his contract
of purchase. The broker, having presented a proposed pur-
chaser who is capable of entering into a contract of purchase,
and willing to do so, has earned his commission when the ven-
dor accepts him and enters into a valid contract with him for
the sale of his land, even though the sale is never in
fact consummated by reason of the failure of the proposed
purchaser to perform his part of the contract. Where the
broker does not expressly warrant the financial ability of the

purchaser procured by him, nor agree to see that the purchase money is paid, and is guilty of no fraud upon his principal, the latter takes the responsibility of accepting the proposed purchaser. If he does so, and enters upon an executory contract for the sale of the land upon his own terms, the broker is entitled to the commissions agreed upon, whether the contract is ever fully executed or not. In the absence of contract it is not the business of the broker to see that the purchase money is paid, or to enforce the contract of sale. That is the business of his principal, the vendor. These principles are sound, and, we think, are supported by the weight of authority. 19 Cyc., title "Factors and Brokers," p. 270 and cases cited in note. See also *Pinkerton* v. *Hudson*, 87 Ark. 506; *Coleman* v. *Meade*, 13 Bush (Ky.) 358; *Glentworth* v. *Luther*, 21 Barb. 145; *Alt* v. *Dosher*, 102 N. Y. App. Div. 344; Rapalje on Real Estate Brokers, § 102.

There is nothing in *Boysen* v. *Frink*, 80 Ark. 254, in conflict with the doctrine here announced. There the commission was "conditioned on payment of the price." It follows that under the contract between appellee and appellant the rulings of the court in modifying appellant's requests for instructions were erroneous. The requests as asked were correct. The court should not have left it to the jury to determine whether appellee relied on his own judgment as to the financial ability of Humphries in ascertaining whether or not Humphries was an acceptable purchaser. The court should have declared this to be his duty, under the evidence in this case, as matter of law.

The allegations and the proof were not sufficient to sustain a recovery for deceit. See *Louisiana Molasses Co., Ltd.,* v. *Fort Smith Wholesale Grocery Co.,* 73 Ark. 542.

No exceptions were saved to the rulings of the court in giving or refusing other requests for instructions. For the error indicated the judgment is reversed, and the cause is remanded for new trial.