BOYLES v. KNOX.

4-8115                                          200 S. W. 2d 966

Opinion delivered April 7, 1947.

*Merle Shouse* and *J. Loyd Shouse,* for appellant.

*V. D. Willis* and *W. S. Walker,* for appellee.

Minor W. Millwee, Justice.   This is an action by appellee, Howard Knox, against appellants, James Boyles and wife, to recover a real estate broker's commission alleged to be due appellee for his services in finding a purchaser for appellants' tourist court located in Harrison, Arkansas.

Appellants listed the property with appellee and Tom Brown, another broker, jointly, in July, 1945, with the understanding that the two brokers would share a 5% commission equally if a buyer were found by either of them.   Appellants placed a price of $24,000 on the property and agreed to extend credit for a part of the purchase price if the buyer was unable to pay all cash. Through the efforts of appellee, Herman W. Bush of Lubbock, Texas, became interested in purchasing the tourist court.   Appellee introduced Bush to appellants and the property was inspected.   Bush made an offer to purchase on the basis of a cash payment of $8,000 with the balance of $16,000 payable according to a definite schedule of monthly payments. Appellee apprised appellants of this offer and conducted further negotiations between the parties which culminated in the execution of the following agreement:

"OFFER AND ACCEPTANCE

*Aug 15*          1945

To     *Howard Knox*       Agent

You are hereby authorized to offer for my account the sum of

*Two Hundred*                    Dollars

for the following described property: *City View Camp consisting of 15 cabins & equip and 4 Room House unfurnished   Balance of down payment in 30 days*

This amount is to be paid in the following manner:

Cash or trade as per statement below   *down*   $ 8,000.00
Loan to be assumed or placed for my account
Balance payable
*$150.00 per month summer*                          $16,000.00
*100.00 per month winter*                           $.....................
                          Total   *Interest at 5%*   $24,000.00

### TRADE OR OTHER SPECIAL CONDITIONS

*May June July Aug Sept Oct*
   *summer months*

*Nov Dec Jan Feb March April*
   *winter months*

### GENERAL CONDITIONS

It is understood that the owner or owners shall furnish complete abstract showing good title, or policies of title insurance, pay all taxes now due or delinquent, and make conveyance to me or my order by warranty deed, date of which shall fix time for dating of notes, adjustment of rents, interest and insurance.

Possession given   *Possession sept 15*

Attached hereto is check for the sum of $*200.00* to become part of payment on acceptance of this offer and if for any reason the offer is finally rejected said sum is to be returned without expense to me.   This offer is to hold good if accepted within   *at once*   days from date.

Signature   *Herman W. Bush*

Phone *29969*      Address   *Lubbock Texas*

THE ABOVE OFFER IS HEREBY ACCEPTED
this *15* day of *Aug* 1945. We agree to pay a
broker's commission of *$1200.00*.

*Jas. Boyles*

*Fleetie D. Boyles*

Owners."

The above instrument was prepared by appellee upon
a printed form shown to have been in general use by real
estate brokers in that locality. We have italicized that
portion of the agreement which was written in by the
parties. After execution of the agreement, Bush returned
to his home in Texas for the purpose of making arrange-
ments for the balance of the cash payment of $8,000.
Several days later he returned to Harrison and according
to his testimony, was ready, willing and able to complete
the down payment of $8,000 and execute a mortgage to
secure payment of the balance of the purchase price
under the written agreement.

In the meantime an "escrow contract" was prepared
at the suggestion of appellants providing for payments
as set out in the agreement of August 15, 1945. This con-
tract provided that a deed to Bush be placed in escrow
to be delivered upon full payment of the purchase price;
that default in any payment of principal or interest for
90 days should result in a termination of the contract,
and all sums previously paid should be considered as
rentals and forfeited as liquidated damages for breach of
the contract. The contract also prohibited Bush from
transferring or selling his interest in the property until
the unpaid indebtedness had been reduced to $8,000.
Bush had the proposed escrow contract examined by a
competent lawyer and declined to accept those provisions
relating to forfeiture and limitation upon Bush's right to
transfer his equity in the property.

Bush also had a mortgage drafted providing for pay-
ments according to the schedule set out in the agreement
of August 15, which he offered to execute as security for
the unpaid balance. Appellants refused to accept a mort-

gage or any arrangement to secure payment of the $16,000 balance other than that provided in the escrow contract. Appellee refunded the $200 earnest payment made by Bush, who refused to accept the escrow arrangement. Appellee then brought this action for recovery of a broker's commission of 5% in the sum of $1,200.

The issues were tried before a jury resulting in a verdict and judgment in favor of appellee for $600. Both parties have appealed from the judgment.

The first contention of appellants for reversal is that the evidence is insufficient to sustain the verdict because the written agreement between appellants and Bush of August 15, 1945, did not constitute an enforceable contract. It is argued that the agreement is so indefinite and incomplete that an action for specific performance of its terms could not be sustained. Appellants cite a number of cases involving actions for specific performance of contracts for the sale of lands and insist that the agreement of August 15, 1945, must have been sufficient to sustain such an action before appellee is entitled to recover his commission. While the agreement between appellants and Bush may not have been skillfully drafted, it fixes the sale price at $24,000 and provides for a cash payment of $8,000 to be made in 30 days. It also provides a definite schedule of monthly payments of $150 for six months of each year and $100 for the other six months of the year to discharge the unpaid balance of $16,000 and interest thereon at 5 per cent. Under § 9398, Pope's Digest, the specification of ''interest at 5%'' in the agreement would require calculation of interest at the rate of 5 per cent. ''per annum.'' It is true that the agreement did not specify the method by which payment of the unpaid balance was to be secured. According to the testimony on behalf of appellee, it was the insistence of appellants that payment of the unpaid balance could be secured by the method specified in the proposed escrow arrangement, and in no other way, that caused the sale to fall through.

However, if it be conceded that the agreement of August 15th was not sufficiently definite in its terms to sustain an action for specific performance, this would not preclude appellee from recovering a commission, if he, in fact, produced a buyer who was ready, willing and able to take the property on terms which were satisfactory to appellants at the time the agreement was made.

In *Dillinger* v. *Lee,* 158 Ark. 374, 250 S. W. 332, it was the contention of appellant, as here, that his contract with the purchaser, Haskins, did not constitute an enforceable contract. Chief Justice McCulloch, speaking for the court in that case, said: ''Conceding that no enforceable contract was entered into between appellant and Haskins, still this does not affect the right of appellees to a commission, for they had complied with their part of the contract by producing a bargainer ready, willing and able to take the property on terms which were satisfactory to appellant. In other words, appellant's contract with appellees was not that they must sell or exchange the land in order to earn a commission, but that they should have a commission for finding a purchaser or bargainer who was ready, willing and able to take the property on the specific terms.''

In *Moore* v. *Irwin,* 89 Ark. 289, 116 S. W. 662, 20 L. R. A., N. S., 1168, 131 Am. St. Rep. 97, this court said: ''The business of a real estate broker or agent is only to find a purchaser, and the settled rule as stated by the courts is that, in the absence of an express contract between the broker and his principal, the implication generally is that the broker becomes entitled to the usual commission whenever he brings to his principal a party who is able and willing to take the property and enter into a valid contract upon the terms then named by the principal, although the particulars may be arranged and the matter negotiated and completed between the principal and purchaser directly.'' In *Poston* v. *Hall,* 97 Ark. 23, 132 S. S. 1001, the court said: ''Where a real estate broker produces a purchaser who is ready, willing and able to purchase the property upon the terms under which

the agent is authorized to negotiate the sale, and the owner refuses to convey, the agent is entitled to his commission." See, also, *Reeder* v. *Epps*, 112 Ark. 566, 166 S. W. 747; *Lasker-Morris Bank & Trust Co.* v. *Jones*, 131 Ark. 576, 199 S. W. 900; *Emerson* v. *E. A. Strout Farm Agency*, 161 Ark. 378, 256 S. W. 61.

In *Branch* v. *Moore*, 84 Ark. 462, 105 S. W. 1178, 120 Am. St. Rep. 78, this court held (headnote 3): "In an action by a broker to recover compensation for effecting a sale of defendant's land, it was no defense that the land constituted defendant's homestead, and that he could not lawfully sell the land without his wife's consent, as plaintiff was not seeking to enforce a contract to sell land, but to recover compensation for services rendered."

In the case at bar appellee was not seeking to enforce the contract to sell the tourist court, but was asking compensation for his services. The controlling question for determination by the jury was whether appellee produced a purchaser who was ready, willing and able to buy the property on terms which were satisfactory to appellants at the time of their agreement with Bush. This question was presented to the jury under conflicting evidence. In testing the legal sufficiency of the testimony to sustain the verdict on this issue, we must view it in the light most favorable to appellee. Appellants testified that the provisions of the proposed escrow contract were discussed and agreed upon prior to, and contemporaneously with, the agreement of August 15, 1945, but they were unable to explain why these provisions were not incorporated in that agreement. Testimony on behalf of appellee was to the effect that the unpaid balance was to be secured by a mortgage and that the escrow arrangement was an afterthought on the part of appellants and insisted upon in order to prevent completion of the sale under the agreement previously made. In this connection there was testimony that appellants found a cash buyer for their property after their agreement with Bush and sought to discourage Bush from going ahead with the sale. Bush de-

nied that any mention was made to him of the escrow arrangement until several days after the agreement of August 15, 1945.

Under this evidence the jury could have reasonably concluded that completion of the sale was prevented through the fault of appellants in insisting upon terms which had never been previously proposed to the purchaser. If appellants considered the provisions of the escrow method of security for payment of the unpaid balance indispensable to a sale, they should have incorporated these provisions in the written agreement with the purchaser. The early case of *Beebe* v. *Ranger,* 35 N. Y. Super. Ct. (3 Jones & Spence) 452, involved facts similar to those in the instant case. There an owner of real estate placed it in the hands of brokers for sale stating his terms to be a certain sum and a certain proportion payable in cash. The brokers procured a purchaser who agreed to those terms. When the contract of sale was being prepared the seller insisted on the insertion of a forfeiture clause therein which had not been previously proposed to the purchaser, and the sale, on account thereof, fell through. In holding the brokers entitled to a commission the court said: "If the defendant had wished to protect himself from liability for the services rendered by the plaintiffs, he should have stated as part of his terms of sale, when asked what they were, that he would require this forfeiture clause to be inserted in the contract of sale.

"From the willingness of the purchaser to complete the contract, in case the forfeiture clause was not insisted on, and his finding the contract satisfactory in all other respects, there is not much force in the seller's objection, that their minds had not met on the interest and insurance clauses, or the kind of mortgage to be given."

We, therefore, conclude that the question whether appellee earned his commission by producing a purchaser who was ready, able and willing to buy the tourist court upon the terms authorized by appellants has been settled by the verdict which is supported by substantial evidence.

Appellants also contend that the trial court erred in giving certain instructions requested by appellee. We deem is unnecessary to set out these instructions, but have carefully examined them and find that the declarations of law contained therein have been approved in those cases which we have heretofore discussed. Other cases to the same effect are collected and discussed in *Nelson* v. *Stolz,* 197 Ark. 1053, 127 S. W. 2d 138. It is insisted that these instructions conflicted with certain instructions given at the request of appellants and were misleading to the jury. It is sufficient to say that appellants did not raise this objection at the trial.

On his cross appeal, appellee contends that the trial court erred in refusing to direct a verdict in his favor for $1,200. Under the joint listing of the property with appellee and Tom Brown, another broker, the two agents were to share the commission equally in the event of a sale by either broker. Brown testified that he declined to join in the suit with appellee for recovery of his (Brown's) part of the commission. Under these circumstances we think the jury was warranted in concluding that Brown had waived the right to recover his share of the commission and correctly rendered a verdict for only that part which appellee was claiming.

Finding no error, the judgment is affirmed on both the direct and cross appeals.