EL DORADO REAL ESTATE Co. INC. *v.* GARRETT

5-3758                           400 S. W. 2d 497

Opinion delivered March 21, 1966

*Spencer & Spencer,* By: *Don Gillaspie,* for appellant.

*Brown, Compton & Prewett,* By: *William I. Prewett,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation involves a broker's commission. Appellant, El Dorado Real Estate Company, Inc., a licensed real estate broker, instituted suit against A. B. Garrett for the recovery of a commission in the amount of $2,625.00 as the balance due on a total commission of $3,300.00, appellant contending that this commission had been earned pursuant to a contract entered into between the parties. On March 7, 1963, Mr. Garrett directed a letter to Mrs. Annie Laurie Dickinson, who operates the El Dorado Real Estate Company, Inc., in which he said:

"This is to serve as permission for you to handle the sale of my farm and timber land located in Calhoun County Arkansas. Binding for six months from date.

"Asking price one hundred dollars per acre plus $10.00 per acre as your commission or a total selling price of one hundred and ten dollars per acre.

"Terms: All cash in the event the purchaser should desire to pay this way. In the event purchaser should prefer terms. Twenty-five percent as down payment, balance carried by me over a period satisfactory to purchaser from five to ten years with equal annual payments at six percent interest."

The lands referred to consisted of 332 acres. Mrs. Dickinson obtained permission to sell 92 acres of the total amount to Curtis Wood for $13,500.00. She was thereupon paid $675.00, and the parties agreed that the balance of $675.00 for this sale would be paid when the

remaining 240 acres of land were sold. Mrs. Dickinson contacted Truman Wood, brother of Curtis Wood, and a resident of Texas, relative to the purchase of the 240 acres. Mr. Wood made an offer for the 240 acres of $23,-000.00, payable $5,000.00 in cash, the balance to be paid in six annual payments of $3,000.00 each, plus interest at the rate of 6% per annum, and signed an "offer and acceptance" to that effect.[1] This paper was forwarded on to Mr. Garrett. Appellee, however, did not sign, but informed Mrs. Dickinson by letter that he could not give possession of a particular 80 acres to Wood until January, 1965, for the reason that this 80 acres had been rented to a Mr. Reynolds for the entire year of 1964. Garrett then mentioned to Mrs. Dickinson that, upon instructing an attorney to prepare the contract, "Be sure and have him make mention that no timber is to be cut or removed from the land until full purchase price has been paid." Mrs. Dickinson replied to this letter by pointing out that to prevent Mr. Wood from cutting timber on the place would deny him the use of the land for the six-year period, and further mentioned that appellee would be protected anyway, as he would hold a first mortgage on the timber, and would be entitled to the money on any cut and sold. Garrett replied to this letter on February 19, stating, "Will go along with you on the timber arrangement as mentioned in your letter of February 17. Providing this arrangement is mentioned in the sales agreement." With this letter he returned the "offer and acceptance," which had been signed by appellee and his wife. Garrett testified that prior to signing the "offer and acceptance," he discussed the timber with Mrs. Dickinson by telephone, telling her that he wanted a clause in the contract of sale to the effect that if Wood sold any of the timber, "he would turn all of the monies he received from the sale of it over to me and I would give him credit on his note in reverse order, on the back end of it * * * ." Mrs. Dickinson confirmed that Garrett gave her oral di-

[1]Wood deposited $500.00 as earnest money to apply on the purchase price if Garrett accepted the offer within ten days; otherwise the money was to be returned to Wood.

rections, but stated that she did not pass them on to Wood, or obtain the latter's approval,[2] because "I didn't think he would object," since Wood had also tendered a cash offer on the property.[3] She stated that she did not include the timber provision in the "offer and acceptance," because she did not feel that it was necessary, since it would be included specifically in the mortgage. Mrs. Dickinson had J. S. Brooks, an attorney of El Dorado, prepare the contract of sale, which included the requests made by Garrett.[4] A meeting was arranged between Wood and Garrett at Hampton, and, according to the evidence, Mr. Wood strenuously objected to the timber provision, stating that he wanted a contract like the one that was given his brother. Garrett testified that the reason for the difference in the contracts to the brothers was that the land sold to Curtis Wood did not contain any timber or gravel. Truman Wood refused to accept the contract as written, but some mention was made of a cash purchase of the property. Mrs. Dickinson testified that Wood asked Garrett if he would take cash, though she never did mention the amount that was offered. Garrett testified that Wood did not make any explicit offer of $23,000.00 cash, but appellee did state that he said he would go back to Union City, and determine whether he would sell the property for that amount in cash.[5] Mrs. Dickinson wrote Garrett several letters, making inquiry whether he had decided to sell the property for cash, but appellee did not answer these letters, testifying that his attorney was in the hospital, and he did not have an opportunity to consult him. On April 2, 1964, Garrett advised Mrs.

[2]It is not entirely clear whether Mrs. Dickinson included reference to Garrett's demand about the "reverse order" when she said that appellee had given her certain directions, which had not been passed on to Wood.

[3]According to Mrs. Dickinson's testimony, Wood had offered to purchase the lands for $20,000.00 cash.

[4]Proceeds from mineral and gravel sales were also included in the provision, and were to be handled in the same manner as the sale of the timber.

[5]Garrett wanted to ascertain from his attorney the amount of tax he would have to pay if he sold the property for cash.

Dickinson that he was taking the 240 acres "off the market," and Mrs. Dickinson returned to Wood the $500.00 earnest money deposit that he had made. Thereafter, appellant instituted suit, as mentioned in the opening paragraph. The case was tried before a jury, which returned a verdict for appellee, and from the judgment entered, appellant brings this appeal.

It is first urged that the court erred in not directing a verdict for El Dorado Real Estate Company, Inc. Appellant bases its position on the argument that it was only required, under its agreement with Garrett, to produce a purchaser ready, willing and able to purchase the lands, and that this was done. This court has rendered several holdings on this subject, commencing at least as far back as 1908. See *Pinkerton* v. *Hudson,* 87 Ark. 506, 113 S. W. 35. Cursory research reveals some fourteen cases relating to brokers' commissions between 1908 and 1963. Though the circumstances differ in the various cases, one fact seems clear, *viz,* it is not necessary that an enforceable contract be executed before the broker is entitled to his commission, unless the agreement between seller and broker, in effect, calls for an actual sale of the property. Among other cases, see *Dillinger* v. *Lee,* 158 Ark. 374, 250 S. W. 332, *Broyles* v. *Knox,* 211 Ark. 426, 200 S. W. 2d 966, and *Fike* v. *Newland,* 225 Ark. 369, 282 S. W. 2d 604.

Aside from any possible ambiguity in the authorization contained in the letter from appellee to Mrs. Dickinson that appellant could "handle the sale of my farm and timber land," it is, at once apparent from the evidence that appellant's obligation, or responsibility, before earning its commission, is far from clear. In the first place—did appellant furnish a buyer ready, willing, and able to purchase the property on the terms set out by Garrett? Let it be remembered that, under the testimony, appellee had advised Mrs. Dickinson before he signed the "offer and acceptance" that the timber clause, heretofore referred to, must be placed in the contract of sale, and she had not passed this information

on to Mr. Wood, thinking it would make no difference to Wood—nor had this requirement been placed in the "offer and acceptance," since she did not feel it necessary (as it would be included in the mortgage). It will be noted that Mrs. Dickinson obtained an attorney, and furnished all information necessary to prepare the contract of purchase; this certainly was going further than merely obtaining a buyer, ready, willing, and able, to purchase. However, Mrs. Dickinson testified that her part in the transaction was already finished, and she was just "helping them out" with the legal work.

On the other hand, was there a cash offer of $23,-000.00, and did Garrett, by his inaction, violate the authorization contained in his letter, which did permit the property to be sold for cash? In fact, whatever contract was entered into between the parties is somewhat vague and difficult to determine, because of the fact that the original agreement was supplemented and varied by subsequent agreements. In accordance with what has been said, we think the broker's contract was ambiguous, and a question of fact was created to be passed upon by the jury. It follows that appellant was not entitled to a directed verdict.

Appellee contends that he was entitled to a directed verdict. This contention is based upon the provisions of Ark. Stat. Ann. § 71-1302 (Repl. 1957), which provides that a broker cannot recover in any court in this state on a suit to collect a commission unless he is licensed, and unless this fact is stated in his complaint. Here, the allegation is not contained in the complaint. After the case had been submitted to the jury, appellee moved for a directed verdict. The court permitted Mrs. Dickinson to be recalled, and to testify that she was a licensed real estate broker, and overruled the motion. Appellee asserts that this was error, but we consider the argument without validity. Appellee does not question Mrs. Dickinson's status as a licensed broker, but only asserts that, as a matter of law, appellant could not recover. In *Dacus* v. *Burns*, 206 Ark. 810, 177 S. W. 2d 748, a like

situation arose in that the broker did not allege that he was a licensed real estate dealer. He did testify that he was a licensed dealer, and the court treated the pleadings as amended. Of course, here this evidence was not originally offered, but it was within the discretion of the trial court to permit the recall of the witness. This evidence was not essential to the jury's determination of the case, and the court's refusal to grant the directed verdict was in line with the reason given in *Dacus*. This court, in approving the action of the trial court in allowing the pleadings to be amended, said:

"The amendment did not change substantially the claim of appellee, and the trial court properly treated the complaint as amended to conform to the proof."

It is asserted that Court's Instruction No. 2 was erroneous. That instruction reads as follows:

"Now gentlemen, you know, of course, that the plaintiff in this case, the El Dorado Real Estate Company, seeks to recover from the defendant, A. B. Garrett, what is generally referred to as a 'real estate' or 'broker's' commission.

"Of course it's undisputed in this case that no sale was actually made of the property here involved, that is, that the owner of the property did not actually transfer title of the property to the prospective purchaser.

"And you are instructed that your verdict should be for the defendant if you find, from a preponderance of the evidence, that the defendant employed the plaintiff to make an actual sale of the property here involved and that under the terms of that employment the plaintiff was to receive a commission only if a sale was actually made and title to the property actually transferred."

This instruction was in error. Though it presents appellee's view of the case, we have held that, even though the agreement calls for an actual sale, a transfer

of title is not essential to the broker's earning a fee (unless there is an express agreement to that effect). *Moore* v. *Irwin,* 89 Ark. 289, 116 S. W. 662. In addition, the court committed error in failing to tell the jury that they should also consider (if no sale were made) whether the failure to make a sale was due to the fault of Garrett.

Court's Instruction No. 4 was also properly objected to. That instruction reads as follows:

"But you are instructed that, unless the agreement between the real estate agent and the owner of property calls for an actual sale, that is, an actual transfer of title, then a real estate agent who is employed to sell property earns a commission when:

"One: The real estate agent procures a purchaser ready, willing and able to buy upon the terms named by the owner of the property, and

"Two: A binding contract is made between the purchaser and the owner of the property.

"And you are instructed, that this is true regardless of whether the sale is actually made, unless the sale was not completed on account of some default or failure on the part of the real estate agent."

"Point One" presents appellant's version, but "Point Two" is an erroneous statement of the law. We have already pointed out that our cases hold that it is not necessary that an enforceable contract be executed before the broker is entitled to his commission, unless the agreement requires an actual sale. Therefore, if the jury found that the commission agreement *did not* call for an actual sale of the property, then it was not necessary that a binding contract be entered into between the owner and purchaser of the property before a commission could be earned. It follows that this instruction was error.

Court's Instruction No. 7 was also objected to. That instruction was as follows:

"Now an exhibit has been introduced into evidence in this case which is referred to as an 'offer and acceptance.'

"In this connection, you are told that it is the contention of the defendant that this 'offer and acceptance' was not intended as a final contract and, therefore, was not a 'binding contract' as that term has been used by the Court.

"Now you are instructed that whether this 'offer and acceptance' was a binding contract under which the seller would have to sell and the buyer would have to buy, depends upon the intention of the parties to said 'offer and acceptance' and in determining that intention you may consider all the facts and circumstances shown by the evidence which relates to that intention."

This was erroneous. The jury's right to pass upon the "offer and acceptance" was entirely dependent upon whether that instrument was ambiguous; if ambiguous, it was the function of the jury to determine what was meant; otherwise, it was the function of the court. But it certainly was not the function of the jury to pass upon the intention of the parties as expressed in the instrument, considering all facts and circumstances, unless that intention was not apparent upon the face of the instrument.

Because of the court's errors, herein mentioned, the judgment is reversed, and the cause remanded.

GEORGE ROSE SMITH, J., disqualified and not participating.