## CONNELLY v. PARKES.

### Opinion delivered October 29, 1923.

1. HIGHWAYS — ENGINEER'S DECISION — CONCLUSIVENESS.—An engineer's decision as to the number of employees necessary to assist him in laying out and measuring the work and inspecting the materials and the compensation therefor *held* final under a contract between a road district and contractor specifying that the engineer's decision as to the meaning of the specifications should be final.

2. HIGHWAYS—CONSTRUCTION CONTRACT—CONCLUSIVENESS OF ENGINEER'S FINDING.—Provision in a highway construction contract that "the engineer shall have full supervision over the entire work, and his decision as to the quality of both material and construction and the meaning of all drawings and specifications shall be final and conclusive," and that "the contractor shall furnish such reasonable amount of help as the engineer may desire in laying out and measuring the work or inspecting material," did not contemplate that the decision of the engineer should be conclusive in the interpretation of the construction contract, or in the determination of any issue that might arise between the contractor and engineer as to their rights and liabilities growing out of their respective contracts with the district.

3. HIGHWAYS — CONSTRUCTION CONTRACT — ENGINEERING WORK. — Under a contract obligating a highway engineer to do all the "engineering work," *held,* under the evidence, that the running of levels, setting slope stakes and inspecting of materials is "engineering work."

4. HIGHWAYS—CONSTRUCTION CONTRACT—EVIDENCE.—Preponderance of evidence held not to sustain a finding that a highway contractor verbally agreed to become responsible to the district's engineer for the salary of an assistant.

5. CONTRACTS—CONSTRUCTION.—In construing a contract, the court should place itself in the situation of the parties, in order to arrive at their intention in making it.

6. HIGHWAYS—CONSTRUCTION CONTRACT—ENGINEER'S HELP.—Where, in a contract between a highway improvement district and a contractor, it was stipulated that the contractor shall furnish "such reasonable amount of help as the engineer may desire in laying out and measuring the work and inspecting material," *held,* that, in view of the custom among engineers, contractors and builders, the intention was not to authorize the engineer to employ assistants by the month to do such work, but to require the contractor to lend, usually for less than a day, one or more laborers when needed by the engineer to make or carry stakes or to hold the end of the surveyor's chain.

Appeal from Pope Chancery Court; *W. E. Atkinson,* Chancellor; reversed.

*John F. Clifford,* for appellant.

This is a highly technical contract, and it will be presumed that, under it, appellee was to do the engineering work for the district as engineering is usually done; and the provision as to giving the engineer a reasonable amount of help should be constructed, if possible, to have some meaning, and, as to that, it will be presumed that the parties contracted with reference to the custom and usage in the line of business in which it was used. 19 Ark. 270; 58 Ark. 565, 574; 84 Ark. 382; 69 Ark. 313. Under this contract and the plans and specifications made a part thereof, the engineer is, to a certain extent, a referee between the contractor and the district, but in no sense a referee between himself and the district, or between himself and the contractor. 146 Ark. 503; 100 Ark. 173. Since, under the above authorities, the engineer cannot construe or interpret the contract, it should be construed by the courts so as to harmonize all portions thereof, and to give each provision, if possible, some meaning, considering the contracts as a whole, to determine the meaning of any particular part as well as of the whole. 94 Ark. 461; 96 Ark. 320; 104 Ark. 475; 154 Ark. 241. Moreover, it must be construed as unfavorable as its terms will admit against the party who prepared it—in this case, against the appellee. 73 Ark. 338; 74 Ark. 41; 90 Ark. 88; *Id.* 256; 112 Ark. 1. The existence of a custom or usage is a proper subject for expert testimony. Elliott on Contracts, par. 1797. The purported agreement to pay for such help, had it been made by Connelly, was against public policy, and non-enforceable. 155 Ark. 288.

*Patterson & Ragon,* for appellee.

1. The contention that the rights of the parties should be governed solely by custom ignores the testimony that appellee called on appellant for the help needed, under the clause of the contract requiring the

latter to furnish such reasonable help as the engineer desired, etc., and that Connelly authorized the employment of such help, agreeing to pay for it.

2. This is not a case calling for interference with with the enforcement of a contract on the ground of public policy. 56 Am. St. Rep. 119; 70 Fed. 201; 59 Fed. 58, 59.

WOOD, J. W. J. Parkes was employed as an engineer of Road District No. 1 of Pope County, Arkansas (hereafter called district), under a contract with the district to do all of its engineering work connected with the improvement to be made by the district, and to pay all the expenses incident thereto for the compensation named in the contract, specifying the work to be done, and, among other things, the following: "The supervision of all construction work, to pay expenses of draftsmen, assistant engineers and other help of whatever kind or character needed in doing the complete engineering work, and to give all of their time necessary to prosecute said engineering work without delay, and to pay all expenses of doing same." The contract further provided that the appellee was "to do the work herein described for the compensation herein set forth." The compensation set forth in the contract was five per cent. of the construction cost of all improvements made by the district, not exceeding in cost $1,000,000, and four per cent. of all such cost in excess of $1,000,000. This contract was entered into April 3, 1919, between appellee and the district. On August 14, 1919, P. F. Connelly and the district entered into a contract for the construction of the work for which the district was created. There was a provision in this contract making the plans and specifications furnished by the district a part of the contract. These plans and specifications were prepared by the appellee Parkes. Among the other provisions contained therein was the following: "The work shall be staked or marked out by the engineer, and any such stakes or marks wilfully or carelessly destroyed or removed by

the contractor or any of his workmen shall be replaced at the contractor's expense;" and

"The engineer shall have full supervision over the entire work, and his decision as to the quality of both material and construction and the meaning of all drawings and specifications shall be final and conclusive. All orders and instructions to the contractor shall be given by the engineer;" and

"ENGINEER'S HELP. The contractor shall furnish such reasonable amount of help as the engineer may desire in laying out and measuring the work or inspecting material."

"The engineer shall furnish monthly estimates of the work done, upon which partial payments to the contractor shall be based, and, in the absence of fraud or error, his decision as to the value and quantity of work or material shall be final and conclusive."

During the construction of the improvement certain deductions were made from the estimates and vouchers furnished Connelly by Parkes to the extent of $2,551.74, which amount Parkes claimed was due him under the contract and should be deducted out of the estimates furnished Connelly to pay men employed by Parkes to lay out and measure and inspect the work and materials. Connelly claimed that, under the contract, he was not indebted to Parkes for this amount, and that same should not have been deducted from the estimates of the amounts due him for his construction work under the contract. Such being the contention between Parkes and Connelly, the district instituted this action against them, setting out its contracts with Parkes and Connelly, and prayed that they be required to interplead for the above amount, tendering the sum into court, and asking that it be relieved from further liability.

The court found generally "the issues in favor of Parkes," and specifically that the funds retained by the district from the estimates of the contractor, Connelly, in the hands of the district, to-wit: the sum of $2,132.26,

should be paid to Parkes, which sum should be reduced by a certain item of cost adjudged against Parkes in the sum of $124.50, leaving a balance due Parkes of $2,007.76, for which it entered a decree in favor of Parkes, and dismissed the intervention of Connelly for want of equity, from which decree Connelly prosecutes this appeal.

No issue is raised as to the amount of the court's decree. The appellant contends that, under his contract with the district, he is not liable for the sum claimed by the appellee. Appellee, on the other hand, contends that, under his contract with the district and under the contract of the appellant with the district, appellant is liable for the above sum, and that the decree of the court was correct in so holding.

1. The specifications for the work prepared by the appellee were made a part of the contract, and it is provided, among other things, that the decision of the engineer as to the meaning of all specifications shall be final. Under this provision his decision as to the number of employees necessary to assist him in laying out and measuring the work and inspecting the materials and the compensation therefor was final. This provision of the contract has reference wholly to any controversy that might arise between the district and the contractor as to the meaning of the specifications in the contract. It has no reference whatever to the interpretation of the provisions of the contract, or of the specifications as a part thereof, in determining any issue that might arise between the contractor and the engineer as to the individual and personal duties and liabilities of one to the other growing out of their respective contracts with the district. The specifications do not express the terms of any contract between the appellant and the appellee. They only enter into the contract between the appellant and the district, and, even in a controversy between the contractor and the district, the decision of the engineer interpreting the rights of the parties under the contract would not be decisive of those rights. This is made plain in *Drainage District No. 5* v. *Kochtitzky*, 146 Ark. 494-

503, where we said: ''The rights of the parties were fixed by the contract, and not by the decision of the engineer. *Williams* v. *Carden's Bottom Levee Dist.*, 100 Ark. 166. There is a distinction between the power of the engineer with respect to interpretation of the plans and specifications and as to the contract itself. The former is supposed to be the work of the engineer, and it is proper, in case of dispute, to refer such interpretation to him, but, as before stated, the rights of the parties are fixed by the contract itself, and it is a question for the courts, and not for the engineer, to determine what those rights are * * *.''

2. The appellee next contends that the laying out and measuring of the work as it progressed and in inspecting materials before their use constituted no part of the ''engineering work of the district; that all work done by the engineer in running levels, laying out of work and driving stakes and indicating on each the amount of excavation or fill, measuring up the work and inspecting the materials before use, was solely for the benefit of the contractor.'' This contention is contrary to the contract itself of the appellee with the district and also of the contract of the appellant with the district and to the decided preponderance of the evidence *aliunde.* The specifications expressly provided that the work ''shall be staked or marked out by the engineer.'' He has supervision over the entire work, and his decision as to quality of both material and construction and the meaning of all drawings and specifications shall be final and conclusive. He is to make monthly estimates of the work done, and his decision as to the value and quantity of the work and material is final and conclusive. ''He is to judge of the value and quantity of work and material, and his decision as to these is final,'' and there is the provision which is the foundation of the appellee's claim, to-wit: ''ENGINEER'S HELP. The contractor shall furnish such reasonable amount of help as the engineer may desire in laying out and measuring the work or inspecting material.''

These provisions show clearly that the work which appellee is seeking, by his intervention, to have the appellant pay for comes under the terms "engineering work of the district." Appellee, in his contract with the district, expressly agreed "to pay all the expense of doing the same," that is, all expense of doing the engineering work.

The testimony of the engineers introduced by the respective parties, except that of the appellee and one or two others, is practically all to the effect that the running of levels, setting slope stakes and the inspecting of materials is "engineering work."

3. The appellee next contends that, regardless of the written contract or custom, the appellant is bound to pay appellee for the help which he employed in laying out and measuring the work and inspecting materials, because, after the contract was entered into and when the appellee began to lay out the work, the appellant did not have men on the ground to aid appellee in carrying out the above provision, and the appellant thereupon entered into a verbal agreement with Connelly in pursuance of the contract to furnish "engineering help," to employ such help, and that appellant would pay for the same. The testimony of the appellee was to this effect, and that he employed such help at approximately $125 a month, which was a reasonable charge for such help, and that the commissioners of the district had deducted such amount from the estimates of the work of the contractor, and had retained the same also from the appellee, of which amount he was claiming the sum of $2,132.11. He testified that laborers were furnished under this provision of the contract from August, 1919, to April, 1921. He introduced a letter from the appellant of February 10, 1920, in which appellant stated that he had sublet certain portions of the work to Henry Brothers, and that they had agreed to do the same according to plans and specifications, and would have to give the "engineer's help" provided for in appellant's contract with the dis-

trict, and that appellant would cheerfully take care of such help in the portions of the work which he had reserved for himself to do. In this letter he asked that the appellee notify the engineer in charge of the work as to who should stand the engineering help. The appellee responded to this letter, telling the appellant that the provisions as to "engineer's help" in his contract bound the appellant to furnish such help, and that the appellee would hold the appellant responsible for such help.

E. N. Jenkins, the engineer in charge of the work, E. Hale, the supervising engineer, Henry Sellers, a resident engineer, and M. Nicholson, who were in the employ of the appellee, testified substantially to the effect that, in conversation with the appellant concerning the question of who should pay for the "engineer's help" provided for in the specifications of the contract, appellant contended that, inasmuch as he had sublet certain portions of the work, and that the subcontractors had contracted to do the same according to the specifications, they were liable for such help; that appellant himself did not contend that he was not liable for such help on work which he himself reserved. Their testimony, in short, was to the effect that the appellant conceded that, under the terms of the specifications and his contract with the district, he was liable for "engineer's help."

Appellant testified, in his own behalf, that he began work about the first of January, 1920, under his contract with the district. He denied categorically that he had the conversations with the appellee and with the engineers mentioned above, who had testified to the effect that appellant had conceded liability for "engineer's help," as claimed by appellee, under the provisions of the specifications in appellant's contract with the district. He stated that he had never authorized the appellee or any of his men to employ any engineers or engineering help and carry them at appellant's expense on appellee's payroll; that appellee had presented him with a statement as early as March 18, 1920, charging the appellant

with such work, amounting to $486.99, which amount was deducted from the amount due appellant on his estimate furnished by the appellee for the work performed by the appellant. He stated that he never agreed with appellee to pay for help, but that he did agree that he would give appellee a man, whenever appellee wanted him, out of appellant's crew, and wrote appellee to that effect, and protested against all charges made by the appellee for any other engineer's help from the beginning. The effect of his testimony was that he had complied with his contract and furnished such "engineer's help" as the specifications called for, and that he denied liability for such help as the appellee was charging him with, and protested against deductions from appellant's estimates to pay for such help from the very beginning, as such claims were made. He stated that he had been in a controversy with the appellee and with appellant's subcontractors; that he had attempted to have a conference with every one in connection with the matter, and had had a conference at one time with them with a view of settling without litigation. He concludes his testimony by saying that "the matter had been a subject of trouble ever since witness had been working on the road." The first deduction was made March 18, 1920, and witness immediately consulted an attorney; that "all amounts which have been discussed were deducted and held back by the district from the money witness had earned for work done for the district. The appellant, in corroboration of his testimony, introduced correspondence which his attorney had with the appellee five days after the first deduction was made for pay of "engineer's help" from the estimate of the amount due the appellant for the work he had performed. In this letter it was stated that appellant protested against such deduction, and suggested that the matter be settled amicably between them before presenting the matter to the board, and that, if appellee did not agree to this, a meeting be held between appellee, appellant, and a representative of the district, in order to settle

the construction of the specification in regard to "engineer's help."

J. T. Bullock, the chairman of the board of commissioners of the district, testified that, pretty soon after the board began issuing vouchers to the contractors and engineer, appellant complained to the board and contended that the appellee was not entitled to deduct from the sums due appellant pay for those assisting him in doing the engineering work from the commencement of the project. He objected to paying those who had been assisting the engineer in measuring and laying out the right-of-way. When the first estimate was rendered in which the appellee asked that deduction be made for such help, appellant objected to it, and the board asked appellant and appellee to adjust the matter in some way and compromise it if they could. The board thought it was settled at one time, if the subcontractors had not kicked out of the harness. It was never fully adjusted. This witness, as chairman of the board, wrote letters to the Highway Commissioner and the attorney for the Highway Commission, asking their advice and assistance in having the controversy adjusted between the appellee and the appellant and the subcontractors with reference to the interpretation of the provision in regard to "engineer's help" in the specifications. This correspondence was in the record.

Without discussing this feature of the case further in detail, we are convinced that a preponderance of the evidence proves that the appellant never had entered into a verbal contract with the appellee by which he bound himself to pay for engineering help such as is claimed by the appellee, independent of his written contract and the provision in the specifications concerning the same. The preponderance of the evidence shows that the appellant, from the beginning, was protesting that he was not liable for such pay. It occurs to us that a preponderance of the testimony tends to prove that there was a controversy between the appellant and the appellee, from the

time when the first estimate was made of his work in which deductions were made for ''engineer's help'' by the appellee, as to the interpretation of the provision concerning same in the specifications. We therefore conclude that the appellant is not bound by any verbal contract, or by any conduct after the first estimate was made, that would estop him from resisting the payment of the claim which the appellee here makes against him.

4. This brings us to the question of what is the proper interpretation to be placed upon the paragraph ''engineer's help'' in the specifications, which was made a part of the contract of appellant with the district. In determining what the parties meant by the use of the language in this paragraph, certain familiar canons of construction must be applied. It must be remembered that this was a contract with the district and not with the appellee. The appellee, in his contract with the district, had bound himself, as we have seen, to do all the engineering work connected with the improvement and to pay the expenses of all help of whatever kind or character needed in doing the complete engineering work. It is not reasonable to suppose that, in view of this contract between the district and the appellee, in which the district had provided liberal compensation to the appellee for all of the engineering work, that the district intended, in its contract with the appellant as the contractor, to require him to pay for any work that should be properly and legitimately classed as engineering work. In construing the contract, we should place ourselves in the situation of the parties in order to arrive at their intention in making it. See *White Construction Co.,* v. *Arkansas-Louisiana Highway Imp. Dist., ante,* p. 452; *Wood* v. *Kelsey,* 90 Ark. 272, and cases there cited.

In the language of the above paragraph, the words ''engineer's help'' is a technical term, as shown by the testimony, and one well understood by those accustomed to such contracts as that under review. The parties must be held to have used the language of this para-

graph in the light of the custom that obtained among engineers, contractors, and builders, showing the meaning of such language when applied to building contracts. *Walsch* v. *Frank,* 19 Ark. 270-277; *Western Insurance Co.* v. *Altheimer,* 58 Ark. 565-574; *McCarthy* v. *McArthur,* 69 Ark. 315-318; *Arkadelphia Lumber Co.* v. *Henderson,* 84 Ark. 382-389; see also 2 Elliott on Contracts, § 1797.

A decided preponderance of the testimony of the engineers who were introduced as expert witnesses in the case was to the effect that it was not usual or customary for an engineer, under the above clause, or other clauses in different specifications substantially the same, to employ men by the month to do such work at the expense of the contractor and to deduct it from the contractor's estimates. The usual practice as to a reasonable amount of help to be furnished by the contractor to the engineer, under such a clause, is to send one or more laborers to make or carry stakes or hold the end of the surveyor's chain, who are given or loaned to the engineer by the contractor. The contractor pays for these men, and they are on his payroll. They are loaned, as a rule, ordinarily for less than a day. Such being the correct interpretation of the language used in the above paragraph of the specifications, as shown by a decided preponderance of the evidence, it follows that the appellant was not liable, under his contract, for such charges as those made by the appellee, and which he sets up in his interplea herein. The chancery court therefore erred in dismissing the appellant's interplea and in rendering a decree in favor of the appellee for the amount in controversy. The decree is reversed, and the cause is remanded with directions to enter a decree in favor of the appellant for the amount of the funds held by the district.