SHIBLEY *v.* WHITE.

4-4623

Opinion delivered April 26, 1937.

*Reid & Evrard,* for appellant.
*Holland & Barham,* for appellee.

MEHAFFY, J. This action was instituted in the municipal court at Blytheville, Arkansas, where a judgment was rendered in favor of appellee for $212. The case was appealed to the circuit court and a verdict and judgment given there for $200.

The complaint filed by the appellee alleged that the appellee and appellant had entered into the following contract:

"This being a contract between H. White, contractor and A. G. Shibley, owner. H. White agrees to furnish all material here mentioned: brick, lime, sand, cement, labor and masons and build walls. Brick walls to be 13 inches thick. 2 walls to be 55 ft. long, one wall to be 50 ft. long. The said walls to be 13 inches thick, 3 ft. high. The fire walls on the east and west to be 9-in. walls. The 13-inch wall on the north side to stop at roof. The said A. G. Shibley agrees to advance the said H. White 85 per cent. of the completed work to meet labor and material bill. And on completion of the job A. G. Shibley agrees to pay the said H. White the remainder of the 15 per cent. up to the contract price which is $1,050.

"Includes a 25-ft. beam with addition of $10.

A. G. Shibley
H. White."

Appellee alleged that he was to use second-hand brick and was to begin work the following Monday; that he commenced putting material on the ground when appellant stopped him; he alleged he was ready, willing and able to carry out the contract and that he had lost $300 profit through appellant's breach of the contract. He asked judgment for $300.

The appellant filed a demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled and answer was filed by appellant denying all the material allegations in the complaint. It alleged that appellee was unable and unwilling to commence the erection of the brick walls referred to, and that he agreed with appellant to postpone the work thereon until a future date, to be

determined upon by agreement of the parties. He denied that appellee would have made a profit.

The case is here on appeal. It is contended here by the appellant that the contract was so uncertain and indefinite in its terms as to be incapable of performance and imposed no obligation on the contractor. The written contract is set out above, and the appellee testified at length about the kind of material to be used, and the price he would have to pay for it, and that he would have made a profit of $300. He testified that he was to build the walls with second-hand brick, and that Shibley was to furnish the foundation. He testified at length about the fire walls and other parts of the work. He testified that when the contract was signed it was understood that he was to start work the next Monday, and that appellant asked him to wait a week, which he agreed to do; that he went by one evening and told Mr. Shibley he was ready to go to work; he put four or five loads of sand on the ground, and the boy hauling the sand told him that Shibley would not permit him to unload one truck load; that Shibley then proposed that White build the wall by the day, asked him where he was buying his brick and how much he paid for it. The appellee refused to take the job by the day and filed suit.

Roy Cunningham testified that he hauled some sand to Shibley's building and Shibley told him not to haul any more right then. Shibley stopped him twice and one time would not let him unload until Mr. White came.

The appellant testified that he signed the contract sometime in August, 1935, and that work was to commence the following Monday; that White was to try to buy good second-hand brick which would cost $12 to $13 a thousand; and if the appellee could not get that sort of brick he was to build with new brick, and that White then said he could not build; White was supposed to put the foundation in too. He, also, testified at length about the walls and the fire walls. He testified that White came around to him and said he could not build. Witness thought this was the first or second day after the contract was signed; the sand was hauled after that, and he told

the boy to wait. White tried to get appellant to let him proceed on the day the case was tried in the municipal court, but appellant was unwilling. The building that Shibley is in is exactly like the drawing he has made for the proposed addition. He testified that in the municipal court White had testified that the brick would cost $9.50 per thousand.

Jack Horner then testified about the cost of brick and the number required for the wall.

The appellee testified on rebuttal that he did not tell Shibley that he could not build for the contract price; that he has in his hand a book from which you can estimate any kind of brick or work or anything in the building line; that Mr. Horner testified sand would cost $2.50; that it cost witness $1.50, and cement 65 cents.

It appears from the evidence that both White and Shibley testified that the walls were to be built of second-hand brick, although they differed in their testimony as to price of such brick. There was no contention made at any time in the lower court by appellant that the contract was indefinite or that he did not understand it, and both of them signed the written contract.

Appellant asked the court to give the jury the following instruction:

"There must be a meeting of the minds in every contract and unless you find there was a meeting of the minds between the plaintiff and defendant in this case, there is no contract upon which White can prevail, and he will not be entitled to a judgment for anything."

The court did not err in refusing to give this instruction. The appellant did not claim that their minds did not meet. He signed the contract himself and made no claim that he did not understand it.

Appellant calls attention to 6 R. C. L. 644, § 59, and while it is stated there that the contract must be certain, it is also stated in the same section: "However, the law does not favor, but leans against the destruction of contracts because of uncertainty. Therefore the court will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can

be ascertained. Though there are some formal imperfections in a written contract, still it is sufficient if it contains matter which will enable the court to ascertain the terms and conditions on which the parties intended to bind themselves. The maxim *Id certum est, quod certum reddi potest,* applies." *Twin City Pipe Line Co.* v. *Harding Glass Co.,* 283 U. S. 355, 51 S. Ct. 476, 75 L. Ed. 1112, 83 A. L. R. 1168.

Appellant calls attention to the case of *Ashley, Drew & Northern Ry. Co.* v. *Baggott & Boyd,* 125 Ark. 1, 187 S. W. 649. The headnote of that case reads as follows: "Courts neither specifically enforce contracts nor award substantial damages for their breach when they are wanting in certainty; damages cannot be measured for the breach of an obligation when the nature and extent of the obligation is unknown, being neither certain nor capable of being made certain."

It is certain from the evidence that both parties understood the contract and that it was capable of being made certain.

The parties to this contract lived at Blytheville, they were familiar with the building of appellant where these walls were to be erected, they knew all about the situation, and while it may be said the contract is ambiguous, both parties understood it, and offered evidence as to the time work should begin, the kind of brick to be used, and the cost of the material.

In construing a contract, the purpose is to ascertain the intention of the parties. Courts may acquaint themselves with persons and circumstances that are subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and to judge of the meaning of the words and of the correct application of the language to the things described. *Inter-Southern Life Ins. Co.* v. *Shutt,* 175 Ark. 1161, 1 S. W. (2d) 801; *Connelly* v. *Parkes,* 160 Ark. 496, 255 S. W. 22.

"If, with the aid of the usual tests and principles of construction, the court is able to ascertain and to

enforce the intention of the parties, their agreement will not be held uncertain. So an agreement drawn up by illiterate persons will not be held uncertain, if it is possible for the court to ascertain their meaning. While a contract, incomplete on its face, may thereby be ambiguous, it is not necessarily void. Absolute certainty is not required. That is certain which may be rendered certain, according to the maxim, *Id certum est quod certum reddi potest*. A promise not in itself certain may be rendered certain by a reference to something certain." 13 C. J. 268, § 60.

The credibility of the witnesses and the weight to be given to their testimony are questions for the jury. The verdict is supported by substantial evidence.

The judgment is affirmed.