CLEMENT SARNA *v.* MARGUERITTE FAIRWEATHER

5-5244                                           453 S. W. 2d 715

Opinion delivered May 18, 1970

*Tanner & Wallace,* for appellant.

*Howell, Price, Howell & Barron,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant seeks reversal of a judgment in favor of appellee for a $4,000 real estate commission. He urges five points for reversal. They are:

I.  Appellee was without capacity to sue.

II  Appellee did not produce purchaser ready, willing and able.

III. Appellee had knowledge of defects of title.

IV. Contracts subject to conditions not performed.

V. Appellee abandoned contract.

We shall discuss them in the order listed.

## I.

Even though Mrs. Fairweather's alleged services were rendered while she was employed as a salesman for Winrock Realty Company, she brought suit in her own name. After appellant demurred to her complaint, she amended it, adding the allegation that she was entitled to recover the commission as the assignee of the realtor. During the course of the trial she introduced two "offer and acceptance" contracts signed by appellant, upon which she based her claim, in part at least. Each contained a statement of an agreement to pay Winrock Realty a fee of 10% for professional services.

Appellee introduced an offer by Rose Ruffin to purchase Gabriel Heights Cemetery addressed to Winrock Realty Company and accepted by Sarna on February 16. She then introduced as her Exhibit 2 an offer from the same buyer to purchase the balance of a 60-acre tract, from which the cemetery property had been taken, accepted by Sarna on the same date. She next offered as her Exhibit 3 and assignment dated September 9, 1969, of all rights of Winrock Realty Company, under an offer by Mrs. Ruffin to purchase the cemetery property. That offer was described as having been dated February 9 and accepted by E. H. Herrod, Trustee, or Clement Sarna. That contract was actually abandoned, and no claim for commission was based thereon. Appellant's counsel called attention to the fact that the purported February 16 agreements under which Mrs. Fairweather actually claimed compensation were not covered by the assignment. Appellee's attorney then stated that the omission was by mistake, which he stated would be corrected quickly. Then appellant's attorney moved that appellee's Exhibit 2 be stricken, because appellee had no right to sue thereon, admitting that his objection was technical because appellee could merely file a new suit thereon promptly if the court dismissed the suit on this objection. Although appellee contends that appellant waived his objection, we take

the waiver to go only to his right to a dismissal of the suit at that time. His counsel definitely stated that there was no waiver of the objection to Exhibit 2. Thereupon, appellee moved for a recess. After the recess, an assignment of the rights of Winrock Realty under the later contract, bearing the current date, was admitted over appellant's objections.

Appellant argues that appellee had no capacity to sue because the chose in action which was the subject of the litigation was not her property at the time the suit was filed. We find this contention to be without merit. We have put substance above form in procedural matters, at least since the adoption of our Civil Code. Appellant does not demonstrate how he was prejudiced by the admission of this document into evidence. If he had plead surprise and asked for time to prepare to defend against this unforeseen development, or even to investigate the circumstances of the execution of the late assignment, he might well have been entitled to a continuance for that purpose. See *St. Louis I. M. & S. Ry.* v. *Power*, 67 Ark. 142, 53 S. W. 572; *Williams* v. *Uzzell*, 108 Ark. 241, 156 S. W. 843. We have been rather liberal in permitting actions to be prosecuted by the real party in interest. See Ark. Stat. Ann. § 27-801 (Repl. 1962). We permitted the holder of a note by delivery without written assignment to sue in his own name under the statute. *Webster* v. *Carter*, 99 Ark. 458, 138 S. W. 1006. In *House* v. *Long*, 244 Ark. 718, 426 S. W. 2d 814, recognizing that the primary purpose of our statute was to prevent harassment of defendants by different suits upon the same cause, we said that the real party in interest is generally conceded to be that person who can discharge the claim on which suit is brought. At the time Marguerite Fairweather offered the later assignment in evidence, she was the person who could discharge the claim, if the assignment was valid. In the absence of any showing of prejudice, or attack upon the assignment, we would submerge substance with form if we sustained the objection made by appellant.

## II.

Appellant contends that there was no proof that the prospective purchaser Rose Ruffin was ready, willing and able to purchase for want of proof of her solvency. He relies upon our holding in *Cherry* v. *Montgomery*, 242 Ark. 233, 412 S. W. 2d 845, that a mere affirmative answer by a witness as to his readiness, willingness and ability to purchase, as a statement of a conclusion, was insufficient to make a prima facie case on that point in a broker's action for a commission and of no probative force in the light of undisputed contrary facts. The record is somewhat different here. The principal question involved in that case was the willingness of the purchaser to buy upon the seller's terms. Even so, we agree that some evidence other than Rose Ruffin's affirmative answer to a question as to her financial ability was necessary to constitute substantial evidence to support the judgment. Appellant's acceptance of Mrs. Ruffin's offer, without questioning her ability to purchase, was some indication of his satisfaction on that point. Mrs. Ruffin testified that she owned quite a bit of real estate. She stated that she had the $35,000 in cash available to make the required cash payment in that amount, even though she did not have with her any statement of her bank account or financial condition. She said that she could have obtained any amount she needed from Paul Leird, who was identified by appellant as president of Dillard Department Stores and who, in partnership with International Development Corporation, eventually purchased the stock of a corporation which owned the cemetery. Mr. Leird also participated in the sale of this stock to Mrs. Ruffin at some later date. Mr. Leird testified that he had known Mrs. Ruffin for many years and had participated in the making of various loans to her by a savings and loan association. When he wanted to sell his holdings in the cemetery company, he knew that she was a logical purchaser. We are unable to say that this testimony was not substantial basis for inferences from which the circuit court could properly find, as it did, that appellee produced a

purchaser who was ready, willing and able to purchase on appellee's terms.

## III.

Appellant here advances the argument that appellee knew that he did not own the record legal title to the property involved and that his agreement with her and acceptance of offers was conditioned upon her obtaining approval of six or seven other persons. This contention is consistent with appellant's testimony. He was corroborated in this respect by an employee. Yet, Mrs. Fairweather testified to the following:

When she inquired on or about February 6, 1966, as to the possibility of his selling other property adjoining another cemetery to Rose Ruffin, Sarna told her that he owned a cemetery and directed her to try to get an offer on it. He also told her he owned land adjoining this cemetery. He did not then tell that any other person was associated with him in this ownership.

Although Sarna had told her after first showing the property to her that he had sold the property, he said that the sale had been "defaulted" so that he had it back and assured her that it was his or that he had controlling interest, so that she need not worry, as he would "take care of it."

When she presented an offer from Mrs. Ruffin on February 9, she took it to Sarna, who said that he had controlling interest and whatever he said was the "say so" but told her she would have to get E. H. Herrod, Trustee, an "officer" who had very little interest, to accept it. She talked with Herrod on the phone, after which he readily signed the acceptance. When she took the subsequent offer to Sarna, he said that there was no reason for him not to sign the acceptance because of his controlling interest and that it would be unnecessary for Herrod to sign.

On the date of Sarna's acceptance of the offer of February 16, there was no discussion or indication that he did not own the property.

When the closing date approached, in response to her inquiry of Sarna as to his readiness, he told her that he had thought that he owned the property, but had learned that he did not.

The trial judge chose to believe appellee's version, emphasizing her failure to attempt to contact any other purported owners, and stating his belief that she would have immediately done so had she been warned that this was necessary.

## IV.

The offer covering the cemetery property accepted by Sarna contained the following clause:

Seller to pay for abstract being brought up to date. This offer is conditioned on Buyer obtaining the present license at the cemetery and that it be free and clear of any debt. This offer conditioned on Buyer using this license on adjoining property North of cemetery. Seller has 77 days to get clear title. This offer is conditioned that a previous offer dated February 9, 1966 to E. W. Herrod (Trustee) on Gabriel Memorial Cemetery is not consummated. In the event that the previous offer on Gabriel Memorial Cemetery is consummated, this offer shall be null and void.

Appellant contends that the statement with reference to allowance to him of time to get clear title to this part of the property shows clearly that the condition was not interposed as a condition of his acceptance but that the offer allowed him a grace period within which to obtain title if he could. He finds substantiation in the failure of Mrs. Ruffin or Mrs. Fairweather to ask for an abstract, to inquire about a survey required by the contract or to advise him that

Rose Ruffin had obtained the required approval of a cemetery license. Still, appellant signed the acceptance of the offer, thus clearly indicating that whatever terms and conditions were stated were satisfactory to him. Appellee earned her commission by producing a buyer ready, willing and able to take the property on the seller's terms, even if the contract were unenforceable, unless the agreement between the seller and the agent required that the sale be actually consummated. *Dillinger* v. *Lee,* 158 Ark. 374, 250 S. W. 332; *Fike* v. *Newlin,* 225 Ark. 369, 282 S. W. 2d 604; *El Dorado Real Estate Co., Inc.* v. *Garrett,* 240 Ark. 483, 400 S. W. 2d 497. We find no evidence justifying a finding that the agreement to pay a commission was based upon such a condition. The written statements of the agent's entitlement to a fee were unconditional. We have held that a seller who employs a real estate agent to produce a purchaser for lands upon terms satisfactory to him is bound by his agreement regardless of the employer's interest in the property or his inability to convey the entire title. *Reynolds* v. *Ashabranner,* 212 Ark. 718, 207 S. W. 2d 304.

## V.

Appellant contends that the failure of appellee or Winrock to demand abstracts of title, to inquire about the required survey, to notify him that the necessary cemetery license approval had been obtained, to communicate with him in any way until shortly before the expiration of the 77 days allowed him to get clear title, and to pursue the matter after he advised appellee that he did not own the property, coupled with their refund of the earnest money to Rose Ruffin, constituted an abandonment of the contract. Even though it is not at all clear that this issue was raised in the trial court, we find it to be without merit, assuming that it was raised. Appellant relies upon the following statement quoted in *Thompson* v. *Harper,* 225 Ark. 47, 279 S. W. 2d 277:

If a broker does not procure a purchaser on the

terms authorized and he abandons further efforts to sell to a prospective purchaser, or if negotiations between the broker and the purchaser are completely broken off and terminated, the broker will not be entitled to a commission if the owner subsequently enters into negotiations with the same party and effects a sale.

That authority is not controlling here unless the testimony of appellant, rather than that of appellee, is found to be more credible and substantial. The circuit judge found to the contrary. Thus, we cannot say that appellee either failed to find a ready, willing and able purchaser upon appellant's terms, or that negotiations were broken off without terms and conditions of a contract for sale having been agreed upon.

Since we find no merit in any of the points relied upon by appellant, the judgment is affirmed.

BYRD, J., not participating.