William P. WHITEFIELD and his Wife *v.*
Burns HAGGART et al

81-7                                           615 S.W. 2d 350

Supreme Court of Arkansas
Opinion delivered May 11, 1981

434

*Carolyn Lee Whitefield*, for appellants.

*Smith, Stroud, McClerkin, Dunn & Nutter*, by: *Charles A. Morgan*, for appellees.

GEORGE ROSE SMITH, Justice. This is an action by two real estate brokers, Haggart and Owens, to recover a 6% commission from Mr. and Mrs. Whitefield for having found a purchaser for a 10-acre tract owned by the Whitefields. The defendants' answer to the complaint was a general denial. Upon trial the jury awarded the plaintiffs $1,050, which was just half the amount of their commission. There are several points for reversal, plus a cross appeal, but we affirm the trial court's judgment in its entirety.

In 1978 the Whitefields orally employed the brokers to find a purchaser for the ten acres, for $35,000. The brokers produced Phyllis Ann McKenzie, who signed a printed form of Offer and Acceptance on December 28. The description the brokers inserted in the form was indefinite: "10 acres more or less . . . owned by Whitefield. Legal to be attached." There has, however, never been the slightest question about what 10-acre tract was involved. In fact, Whitefield himself,

called as a witness by the plaintiffs, testified that he owned no other land at the time. On January 2, 1979, the Whitefields accepted Mrs. McKenzie's offer by signing the Offer and Acceptance, which included this sentence just above the Whitefields' signatures: "We agree to pay the below named agent a fee of 6% for professional services rendered in securing said offer." Haggart signed below.

After the signing of the Offer and Acceptance, negotiations looking to the final closing of the sale were conducted by Charles Morgan as attorney for the buyer and by Whitefield's sister Carolyn as attorney for the sellers. Difficulties arose about the manner of financing the sale, even though the Offer and Acceptance had stated explicitly that the buyer would pay $8,000 in cash and the sellers would carry the balance of $27,000 at 8½% interest with specified monthly payments for 15 years, the sellers giving a deed and the purchaser executing a note and deed of trust. The problem seems to have been that the Offer and Acceptance recited that the sellers would furnish title insurance, but the property was actually subject to an outstanding mortgage of about $16,000, payable in installments. That refinancing problem was evidently the responsibility of the sellers, not of the buyer nor of the brokers.

Finally, on January 31, 1979, just before the intended transfer of possession, Miss Whitefield wrote Morgan that "the purported contract . . . is in fact not a contract," that there would be no transfer of any property to the buyer, and that "Mr. Whitefield does not desire to sell any property at this time." This suit by the brokers followed, with the record indicating that Mrs. McKenzie also brought suit for specific performance.

We consider first the Whitefields' argument that the jury should have been instructed in substance that the Offer and Acceptance was void because of the indefinite description of the land. That may or may not have been true as between the sellers and their buyer, but the invalidity of the contract is not material to the brokers' right to recover their commission. In the first place, the Whitefields signed a contract reciting that a legal description would be attached.

Whitefield admitted that he had the correct description, which was by metes and bounds. During the negotiations, however, his sister refused to supply the description. Obviously one who employs a broker to sell his land must furnish a legal description; so the omission was not that of the brokers.

In the second place, the brokers would be entitled to their commission even if the description had been bad and the Whitefields had refused to sign the Offer and Acceptance for that reason. A broker's contract is not within the statute of frauds and need not be in writing. *Walthour* v. *Finley*, 237 Ark. 106, 372 S.W. 2d 390 (1963). It is immaterial that the principals do not sign the contract of sale, because the broker earns his commission by producing a purchaser ready, willing and able to take the property on the seller's terms, even though no enforceable contract of sale is executed. *Fike* v. *Newlin*, 225 Ark. 369, 282 S.W. 2d 604 (1955);*Reeder* v.*Epps*, 112 Ark. 566, 166 S.W. 747 (1914);*Moore* v. *Irwin*, 89 Ark. 289, 116 S.W. 662, 20 L.R.A. (n.s.) 1168, 131 Am. St. Rep. 97 (1909). Thus there was no occasion for the trial judge to instruct the jury about the validity of the Offer and Acceptance.

Next, the Whitefields argue there is no substantial evidence to support the jury's finding that the brokers produced a purchaser ready, willing and able to buy the property. It was, however, not necessary for Mrs. McKenzie to tender complete performance, because the sellers put themselves in default when they reneged on their promise by notifying the buyer's attorney that they did not desire to sell the property. In that situation it was enough for the buyer to indicate her willingness to perform in case of the sellers' concurrent performance. *Loveless* v. *Diehl*, 236 Ark. 129, 364 S.W. 2d 317 (1963). That concurrent performance was never tendered by the Whitefields; to the contrary, they repudiated their obligation.

The proof of Mrs. McKenzie's being ready, willing and able to buy was clearly sufficient to go to the jury. It is undisputed that she signed the Offer and Acceptance and put up $500 as earnest money. She retained Morgan as her

attorney, who worked toward the completion of the sale until Miss Whitefield abruptly ended the negotiations. The day before that Morgan had written her that Mrs. McKenzie had the $8,000 down payment on deposit. Broker Owens, who was in contact with Mrs. McKenzie, testified that not only was she ready, willing and able to purchase. "She wanted the property as soon as she could get it." We need not decide whether broker Haggart's similar testimony was admissible, because at most its admission into evidence was cumulative and harmless error. In short, the plaintiffs made a strong prima facie case on this point, but the Whitefields offered not one word of proof to question Mrs. McKenzie's readiness, willingness, or ability to buy. Quite the opposite, their acceptance of Mrs. McKenzie's offer, without questioning her ability to purchase, indicated their satisfaction on that point. *Sarna* v. *Fairweather*, 248 Ark. 742, 746, 453 S.W. 2d 715 (1970).

We need not discuss in detail the Whitefield's arguments about special interrogatories to the jury, a device not extensively used in Arkansas. Both brokers testified that they were licensed as such in Arkansas. There was no dispute about that fact. Even so, the Whitefields insist it was reversible error for the trial judge to refuse to submit an interrogatory requiring the jury to determine whether the plaintiffs were licensed real estate brokers. The far-fetched argument is that the brokers were parties to the action; so their testimony is not regarded as undisputed. The short answer to this argument is that if by some blunder the jury had found that the plaintiffs were not licensed, the trial judge would have been required to set aside the verdict as being against the preponderance of the evidence. Thus the interrogatory would necessarily have been futile.

On cross appeal the brokers argue that upon the undisputed testimony they were entitled to recover the full amount of their commission; so we should increase the judgment to $2,100. That same argument about a jury verdict was rejected in *Fulbright* v. *Phipps*, 176 Ark. 356, 3 S.W. 2d 49 (1928), a case that has been followed many times. We do, however, sustain the appellees' request for an allowance of $417.35 for the cost of their supplemental abstract, which

we find to have been necessary. That amount will be taxed as additional costs.

Affirmed.

HOLT, J., not participating.

ADKISSON, C.J., concurs.

RICHARD B. ADKISSON, Chief Justice, concurring. Although I concur in the result of this decision, I must disagree with the majority's unqualified statements that "the · invalidity of the contract [for sale of land] is not material to the brokers' right to recover their commission," and that "the brokers would be entitled to their commission even if the description had been bad and the Whitefields had refused to sign the Offer and Acceptance for that reason," and that "the broker earns his commission by producing a purchaser ready, willing, and able to take the property on the seller's terms, even though no enforceable contract of sale is executed."

For authority the Court first cites *Fike* v. *Newlin*, 225 Ark. 369, 282 S.W. 2d 604 (1955). There the broker arranged a trade of properties between two of his clients, the Fikes and the Hintons, the former to be liable for the broker's commission. The Fikes raised as one reason for the nonpayment of the commission the fact that the offer and acceptance was unenforceable for lack of the signatures of either Mrs. Hinton or Mr. Fike. Based upon the particular facts of the case the Court there correctly held that an enforceable contract was unnecessary because there was no evidence of detriment to the broker's principals, the Fikes, who sought to unjustifiably "back out" of the sale. However, there are many cases where the "enforceable contract" element of proof by a broker is prerequisite to his recovery of a commission.

The more complete statement of the rule for recovery of brokerage commissions in such cases is found in the early case of *Pinkerton* v. *Hudson*, 87 Ark. 506, 113 S.W. 35 (1908) in quoting from *Lunney* v. *Healey*, 56 Neb. 313, 76 N.W. 558, 44 L.R.A. 593 (1898):

[W]here a real estate broker contracts to produce a purchaser who shall actually buy, he has performed his contract by the production of one financially able, and with whom the owner actually makes an *enforceable* contract of sale. The failure to carry out that contract, even if the default be that of the purchaser, does not deprive the broker of his right to commissions. (Emphasis mine)

The Court went on to find the broker entitled to commissions in *Pinkerton*, stating: "The sale was closed, so far as appellant [broker] was concerned, when an *enforceable* contract of that kind [for sale of land] was executed." (Emphasis mine)

From a careful reading of *Fike* and *Pinkerton* it is apparent that to receive a commission the broker must prove (1) that he has produced a person ready, willing, and able to buy under the terms of the brokerage contract, and (2) that his efforts resulted in either a completed sale, a contract of sale susceptible of enforcement by the principal, or an incomplete sale due to the fault of the principal. The reason for this "enforceable contract" element of proof is stated in a quote from *Lunney*:

In such case the vendor may usually enforce the specific performance of the contract, and he may in any case recover damages for the breach. In either way he gets the advantage of his bargain, and the broker has done all required of him. Such is the generally accepted view.

44 L.R.A. 593, 597.

It is easy to surmise a situation where, through negligence or fraud, a broker would produce the "ready, willing, and able" buyer but include some flaw in the contract of sale, such as an inadequate description of the principal's land, which would allow the purchaser to back out of the deal and would not allow the principal to gain the benefit of his bargain with the broker because the contract is incapable of being specifically enforced as reasoned in *Lunney*. This situation should signal caution in extending the rule in *Fike*

440

to all unenforceable contract situations caused by the ineptness or fraud of a broker who collects his commission leaving the seller saddled with his land and in a position of having to file or defend a suit for fraud or negligence against the broker.

The *Reeder* and *Moore* cases cited by the majority (in addition to *Fike*) both cite the "binding contract" and "enforceable contract" language in the test for when commissions become due.

Here testimony indicates that the purchaser was ready, willing, and able to perform pursuant to the agreed terms regardless of the unenforceability of the contract of sale. The seller, as in *Fike*, refused to complete the sale thus excusing the necessity of the broker proving an enforceable land sale contract.