James P. DZIGA *v.* MURADIAN BUSINESS BROKERS, INC.

CA 89-17                                      773 S.W.2d 106

Court of Appeals of Arkansas
Division I
Opinion delivered June 28, 1989

*Pope, Shamburger, Buffalo & Ross,* by: *Joseph L. Buffalo, Jr.,* and *Brad A. Cazort,* for appellant.

*Ed Daniel,* for appellee.

JAMES R. COOPER, Judge. This appeal from the Pulaski County Circuit Court involves the question of whether the appellee, a business broker, is entitled to a commission for finding a buyer for the appellant's delivery business. The trial court found the appellee was entitled to a commission of $10,000.00. The appellant claims that the appellee is not entitled to any commission because there was no contract of sale between the appellant and the buyers because there was no meeting of the minds. We find no error and affirm.

The appellant owns Dziga Delivery, an unincorporated business which delivers prescriptions for pharmacies in Pulaski County, Arkansas. The business has no salaried employees or delivery vehicles but has contracts with about a dozen individuals who handle the actual deliveries of prescriptions. The business has some physical assets, but its assets are largely intangibles, such as customer goodwill, the business name, experience, and ongoing customer contracts. According to the record, it made a profit of $49,070.00 on gross revenues of $198,830.00 in 1987.

The appellant and the appellee entered into a listing agreement in 1987 whereby the appellee agreed to attempt to sell the appellant's business, for which it would be paid a commission of $5,000.00 or ten percent of the purchase price, whichever was greater. Among other provisions the listing agreement included the following clause:

> Owner agrees that the commission shall be due and payable to the Broker immediately if the Owner, or any person acting on behalf of the Owner, enters into a contract of sale, accepts a deposit, opens an escrow or records a notice of intention to sell the property, during the period of this listing agreement, and the cancellation or rescission of any of the foregoing acts shall not act as a release of the

Owner from liability for the commission.

In November 1987, the appellee found buyers (the Gillaspys) for the business. The appellant and the Gillaspys executed an "Offer and Acceptance," which provided for a purchase price of $100,000.00, with $35,000.00 cash down payment with the "[b]alance of purchase price, $65,000.00 to be paid to Seller [the appellant] pursuant to a secured promissory note in said amount, payable $952.27 or more, per month, with interest thereon at 9% per annum."

The appellant and the Gillaspys consulted an attorney to draft the documents necessary to complete the sale. However, the appellant at some point insisted on collateral beyond the business assets themselves as security for the $65,000.00 promissory note. The Gillaspys refused, and the sale was never completed. The appellee then commenced this action to recover a commission from the appellant.

■ The appellant argues that the offer and acceptance was not an enforceable contract and that the appellee was therefore not entitled to a commission. This argument is premised on the contention that the meaning of the term "secured" in the offer and acceptance is unclear. Therefore, the appellant asserts, there was no mutual assent of the parties to an essential term of the contract, and the contract was thus a nullity. We do not agree. Although it is essential to the finality and completeness of assent that all terms should be definitely agreed upon, *Madden* v. *Hart*, 249 Ark. 1054, 463 S.W.2d 352 (1971), it does not follow that the parties must share identical, subjective opinions as to the meaning of those terms before a valid contract can be formed.

> Assent in the sense of the law is a matter of overt acts and expressions, not of inward unanimity in motives, design, or the interpretation of words. The meeting of minds, which is essential to the formation of a contract, is not determined by the secret intentions of the parties, but by their expressed or manifested intentions, which may be wholly at variance with the former. The question of whether a contract has been made must be determined from a consideration of the expressed or manifested intention of the parties — that is, from a consideration of their words and acts.

17 Am. Jur. 2d *Contracts* Section 19 (1964). The expressed intention of the parties in this case was that the buyers would provide the appellant with a secured promissory note in the amount of $65,000.00. "Secured" means "[s]upported or backed by security or collateral such as a secured debt for which property has been pledged or mortgaged." *Black's Law Dictionary* 1215 (5th ed. 1979). The appellant does not assert that the definition of "secured" is unclear but instead contends that the offer and acceptance lacked certainty because it did not specifically state what the collateral for the promissory note was to be. He argues that, because he intended to obtain collateral other than the business itself, and because the buyer expected that the business would serve as collateral for the promissory note, mutual assent was lacking and the trial court erroneously rewrote the contract for the parties.

> Courts often declare that they "can not make contracts for the parties," a statement that is quite true; but it is of much greater importance to realize that the courts must determine the requirements of justice and that the legal effects thus given to expressions to agreement are seldom exactly what one or both of the agreeing parties supposed or expected.

> By the foregoing it is not meant that courts are indifferent to the actual intentions and expectations of men or to the legal effects that one or both contracting parties thought that they were producing. But in the law of contracts, as in all other legal fields, "justice" is not attained by giving the parties unlimited freedom or power, by enforcing every result that either one of them expected and intended, or by never enforcing a result unless both of them expected and intended it.

A. Corbin, *Corbin on Contracts* Section 9 (1 vol. ed. 1952).

■ The law does not favor the destruction of contracts because of uncertainty, and courts will, if possible, construe the contract in a manner which gives effect to the reasonable intention of the parties. *Shibley* v. *White*, 193 Ark. 1048, 104 S.W.2d 461 (1937).

■ Although we agree that the offer and acceptance is

ambiguous because of the parties' failure to specify the manner in which the promissory note was to be secured, and must therefore be construed, we disagree with the appellant's contentions that the appellee was a third-party beneficiary of the offer and acceptance agreement and that the contract must therefore be strictly construed against the appellee as the party preparing the instrument.

> There is a presumption that parties contract only for the benefit of themselves and a contract will not be considered as having been made for the use and benefit of a third party unless it clearly appears that such was the intention of the parties. *Howell, et al. v. Worth James Const. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976).

*Brown v. Summerlin Assoc., Inc.*, 272 Ark. 298, 301, 614 S.W.2d 227, 229 (1981). Here, any benefit accruing to the appellee arose not from the terms of the offer and acceptance but instead from the provisions of the appellee's separate contract with the appellant. We find no indication that the parties to the offer and acceptance intended to make that agreement for the use and benefit of the appellee. Nor do we agree that the failure to specify the collateral for the promissory note had the effect of rendering the offer and acceptance void for lack of certainty.

> While a contract, incomplete on its face, may thereby be ambiguous, it is not necessarily void. Absolute certainty is not required. That is certain which may be rendered certain, according to the maxim, *Id certum est quod certum reddi potest.*

*Shibley v. White*, 193 Ark. at 1053. The record clearly shows that the parties to the offer and acceptance agreement intended to enter into a binding contract. The words "this is a legally binding document" are conspicuously printed in bold, capital letters on the face of the agreement. Moreover, the overriding purpose of the agreement was the sale of the business to the Gillaspys, and the nature of the collateral necessary to secure the promissory note was incidental to this overriding purpose; the nature of the collateral was therefore not an essential term of the contract. *See Leonard v. Downing*, 246 Ark. 397, 438 S.W.2d 327 (1969). Under these circumstances, and under the rules of construction previously cited, we think that the terms and nature of the

agreement necessarily imply that the parties intended only that *reasonable* collateral be provided as security for the promissory note. *See S.F. Bowser & Co.* v. *Marks*, 96 Ark. 113, 131 S.W. 334 (1910); 17 Am. Jur. 2d *Contracts* Section 255 (1964).

The initial determination of the existence of an ambiguity in a contract rests with the court, and if ambiguity exists, parol evidence is admissible, and the meaning of the term becomes a question for the fact finder. *Don Gilstrap Builders, Inc.* v. *Jackson*, 269 Ark. 876, 601 S.W.2d 270 (Ark. App. 1980). "We do not reverse on a factual issue as long as there is evidence to support the trial court's finding and the finding is not clearly against the preponderance of the evidence." *Country Corner Food and Drug, Inc.* v. *Reiss*, 22 Ark. App. 222, 227, 737 S.W.2d 672 (1987). The trial court, after hearing the conflicting testimony, found that the promissory note could have been secured by the assets of the business. There was evidence that, in addition to the tangible assets of furniture and pagers, the business generated monthly receipts totaling $16,152.50 per month. In light of this evidence, we cannot say that the trial court erred in finding that the business, physical assets, and accounts receivable would have provided reasonable security for the promissory note. We hold that the offer and acceptance constituted an enforceable contract.

The appellant also argues that the appellee is not entitled to a commission because he, as drafter of the agreement, was responsible for the use of a term which was too ambiguous to permit the formation of an enforceable contract. Because we have held that the offer and acceptance did constitute an enforceable contract, we need not address this issue.

The appellant next contends that, even if there were an enforceable contract, the appellee had not earned any commission. We articulated the general rule applicable in cases such as this in *Rector-Phillips-Morse, Inc.* v. *Huntsman Farms, Inc.*, 267 Ark. 767, 590 S.W.2d 317 (Ark. App. 1979):

> In *El Dorado Real Estate* v. *Garrett*, 240 Ark. 483, 400 S.W.2d 497 (1966), the Arkansas Supreme Court observed that one thread that seems to be woven in cases rendered by the Court between 1908 and 1963 relative to a broker's commission involving real estate — where a purchaser has been produced who is ready, willing and able

to purchase the lands — it is not necessary that an enforceable contract be executed before the broker is entitled to his commission, unless the agreement between the seller and broker calls for an actual sale of the property.

In *Sarna* v. *Fairweather*, 248 Ark. 742, 453 S.W.2d 715 (1970), the Supreme Court again re-emphasized that a broker earns his commission by producing a buyer ready, willing and able to take the property on the seller's terms, even if the contract were unenforceable, unless the agreement between the seller and agent required that the sale be actually consummated.

267 Ark. at 772, 590 S.W.2d at 320. And in *Whitfield* v. *Haggart*, 272 Ark. 433, 615 S.W.2d 350 (1981), Justice George Rose Smith observed that a seller's acceptance of a buyer's offer, without questioning the buyer's ability to purchase, indicates the seller's satisfaction on that point, relying on *Sarna, supra.* In *Graham* v. *Crandall*, 11 Ark. App. 109, 668 S.W.2d 548 (1984), this Court stated:

In *Pinkerton* v. *Hudson*, 87 Ark. 506, 113 S.W. 35 (1908) the Arkansas Supreme Court stated:

"The law is well settled that 'where a real estate broker contracts to produce a purchaser who shall actually buy, he has performed his contract by the production of one financially able, and with whom the owner actually made an enforceable contract of sale. The failure to carry out that contract, even if the default be that of purchaser, does not deprive the broker of his right to commissions.' "

This language is applicable to the case at bar. The sellers entered into an enforceable contract with the buyers who were supplied by the appellant. It does not matter for purposes of the broker's commission that the parties subsequently could not agree on the completion of the land sale, but the fact that they had entered into an enforceable contract, . . . entitled the broker to his commission, in the absence of a showing of fraud or misrepresentation.

11 Ark. App. at 112, 668 S.W.2d at 549-50.

Here, the appellee and the appellant had a binding contract which specified the conditions under which the appellee would be entitled to a commission for finding appellant a buyer for his business. The appellant entered into an "Offer and Acceptance," with the Gillaspys, and the terms of that contract were found by the trial judge to be sufficient to form a binding contract of sale with the buyers. Although the appellant never closed the sale with the Gillaspys, the court found the transaction to be susceptible of closing and found that the appellee had performed in such a manner as to entitle it to a commission.

Based on our review of the record, we cannot say the decision below is clearly against the preponderance of the evidence.

Affirmed.

ROGERS and CRACRAFT, JJ., agree.