ERC MORTGAGE GROUP, INC. *v.* Jerry LUPER

CA 89-519                                              795 S.W.2d 362

Court of Appeals of Arkansas
Division I
Opinion delivered September 12, 1990

20

*Warner and Smith*, by: *G. Alan Wooten*, for appellant.

*Phillip J. Taylor*, for appellee.

JOHN E. JENNINGS, Judge. Appellee, Jerry Luper, brought this action against appellant, ERC Mortgage Group, Inc., alleging, among other things, breach of an employment contract. At the close of appellee's case below, appellant's motion for directed verdict was granted as to all counts except that for breach of contract. At the close of appellant's case the motion for directed verdict was renewed, was again denied, and the jury returned a verdict in favor of appellee for $5,602.24. Appellee was awarded attorney's fees of $1,500.00 plus costs. Appellant's motion for judgment notwithstanding the verdict was denied. On

appeal, appellant argues two points: (1) that the trial court should have granted either appellant's motion for a directed verdict or motion for judgment notwithstanding the verdict because there was no substantial evidence of a breach of contract by appellant; and (2) that the court improperly awarded attorney's fees to the appellee. We find no error, and affirm.

In the fall of 1987 appellee, Jerry Luper, worked in Fort Smith as a closing agent, and had closed some home loans that were handled through appellant, ERC Mortgage Group, Inc. Employees and officers of ERC Mortgage Group began talking to Luper about the possibility of his coming to work for ERC as a home loan originator. The testimony by both Luper and Jane Brightop, who was president of ERC Mortgage at that time, was that there were ongoing negotiations during November and December of 1987 about aspects of the job, including compensation. Luper did not want to work on straight commission, and testified that an agreement was reached where he would be paid $1,000.00 a month plus commissions for one year. Luper was invited to the ERC Mortgage Group Christmas party, where he was handed a document captioned "Employment Plan," essentially a memorandum to Luper dated December 18, 1987, signed by Austin Brightop, the company's state originations supervisor. The document purported to be an employment plan designed for Luper, renegotiable on an annual basis. It described a sliding commission scale, and stated that Luper would be given a $1,000.00 monthly expense allowance. The document stated that Brightop was pleased that Luper was joining the company beginning January 4, 1988. Luper testified that he accepted the terms at the Christmas party, and began work on January 4.

In late June or early July of 1988, Luper was informed by Steve Clark, the company's assistant vice-president and Luper's supervisor, that as of August 1st Luper's monthly expense allowance would be cut to $500.00, and that as of September 1st his monthly expense allowance would be eliminated, effectively putting Luper on straight commission. Luper testified that he continuously questioned this reduction, asking Clark to have Jane Brightop call him. Luper said he never heard from Brightop.

In August, in the midst of this dispute, a question of possible impropriety in the preparation of some loan documents arose.

Conflicting testimony was offered concerning the details, but Luper testified that the end result was his being forced to submit his resignation. Witnesses for ERC Mortgage Group testified that Luper had committed an error in the preparation of an employment verification form that would have led to his being fired had he not resigned. Four months after his resignation, Luper brought this action.

Appellant argues that there was no substantial evidence of a breach of contract by it, and that the trial court should therefore have granted its motion for directed verdict or its motion for judgment notwithstanding the verdict. When asked to review the denial of a motion for directed verdict, this court examines the evidence, along with all reasonable inferences deducible from it, in the light most favorable to the party against whom the motion is sought; only if the evidence viewed in that light would require the setting aside of a jury verdict should a trial court grant a directed verdict. *Thomas* v. *Allstate Ins. Co.*, 27 Ark. App. 27, 766 S.W.2d 31 (1989); *First Nat'l Bank of Wynne* v. *Hess*, 23 Ark. App. 129, 743 S.W.2d 825 (1988). Only when the proof of one party is so clear, convincing and irrefutable that no other conclusion could be reached by reasonable men, should the issue be taken from the jury and decided by the court. *Barger* v. *Farrell*, 289 Ark. 252, 711 S.W.2d 773 (1986). A judgment notwithstanding the verdict may be entered only if there was no substantial evidence to support the jury verdict. *First Nat'l Bank of Wynne* v. *Hess*, 23 Ark. App. 129, 743 S.W.2d 825 (1988).

Appellant's contention is that there could not have been a contract because (1) the letter from Brightop to Luper was not signed by Luper, and (2) there was no "meeting of the minds" and therefore no mutual agreement. There is no general requirement in the law of contracts that a contract or agreement be signed by both parties, although the statute of frauds requires certain contracts to be signed by "the party to be charged." In the case at bar the jury could find that the letter from Brightop was an offer, which is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). "Unless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any

medium reasonable in the circumstances." Restatement (Second) of Contracts § 30. "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement (Second) of Contracts § 50. Here the evidence would support a finding that the appellee accepted appellant's offer either verbally or by his subsequent performance. See Restatement of Contracts § 30 and § 50. While it is true that the terms of a contract must be reasonably certain, they are sufficiently so if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. Restatement (Second) of Contracts § 33. The law does not favor the destruction of contracts because of uncertainty. Shibley v. White, 193 Ark. 1048, 104 S.W.2d 461 (1937). And while it is also true that a "meeting of the minds" or a manifestation of mutual assent is a requirement for the formation of a contract, Restatement (Second) of Contracts § 17, the standard is an objective one. See Dziga v. Muradian Business Brokers, Inc., 28 Ark. App. 241, 773 S.W.2d 106 (1989); Restatement (Second) of Contracts § 17, comment c. A manifestation of assent may be made wholly by spoken words or by conduct. See Restatement (Second) of Contracts § 19.

■ On the facts of the case at bar we cannot say there was no substantial evidence to support the jury's finding that there was a contract between the parties.

After the jury returned the verdict for $5,624.00, Luper was awarded an attorney's fee by the court of $1,500.00 pursuant to Ark. Code Ann. § 16-22-308. That section provides in part:

> In any civil action to recover on [a] . . . breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney fee to be assessed by the court and collected as costs.

Appellant agrees that an award of attorney's fees is discretionary with the trial court under the code provision, but contends that under the circumstances Luper was not the "prevailing party." The basis of the argument is that six of the seven counts contained in Luper's complaint were dismissed on the appellant's motion at the close of Luper's case-in-chief.

*Quapaw Co.* v. *Varnell*, 566 P.2d 164 (Okla. Ct. App. 1977), was a suit based on an oral contract of employment. The plaintiff's complaint contained four causes of action. Two of the causes of action were stricken by the Oklahoma Supreme Court on appeal from the trial court's denial of motion for summary judgment. The remaining two causes of action were submitted to a jury which awarded Varnell $6,000.00 on one and nothing on the other. Under an Oklahoma statute providing for the award of an attorney's fee to the prevailing party, the trial court found that both parties prevailed and awarded each an attorney's fee.

The Oklahoma Court of Appeals reversed and cited with approval *Ozias* v. *Haley*, 141 Mo. App. 637, 125 S.W. 556 (1910):

> There can be but one prevailing party in an action at law for the recovery of a money judgment. It transpires frequently that in the verdict each party wins on some of the issues and as to such issues he prevails, but the party in whose favor the verdict compels a judgment is the prevailing party. Each side may score but the one with the most points at the end of the contest is the winner, and . . . is entitled to recover his costs.

*See also Hansen* v. *Levy*, 139 Misc. 693, 248 N.Y.S. 200 (N.Y. App. Term. 1930) and *Sharpe* v. *Ceco Corp.*, 242 So. 2d 464 (Fla. Dist. Ct. App. 1970); *cf. Garner* v. *Limbocker*, 28 Ark. App. 68, 770 S.W.2d 673 (1989) (attorney's fees awarded to prevailing party pursuant to 42 U.S.C. § 1988 even when recovery was "extremely slight" in view of complaint). The Oklahoma Court of Appeals adopted the rule stated in *Ozias*, holding that Varnell was the prevailing party. The holding in *Quapaw* has since been expressly approved by the Oklahoma Supreme Court. *The Company, Inc.* v. *Trion Energy*, 761 P.2d 470 (Okla. 1988).

We agree with the view of the trial court here that the appellee was the "prevailing party" under Ark. Code Ann. § 16-22-308. There is no contention that the amount awarded was an abuse of the trial court's discretion.

Affirmed.

COOPER and MAYFIELD, JJ., agree.