BYME, INC. *v.* Jackie IVY and Connie Ivy

CA 03-716 141 S.W.3d 913

Court of Appeals of Arkansas
Division III
Opinion delivered January 21, 2004

*Wright, Lindsey & Jennings LLP*, by: *Troy A. Price*, for appellant.

*Friday, Eldredge & Clark LLP*, by: *Marvin L. Childers* and *Bruce B. Tidwell*, for appellees.

KAREN R. BAKER, Judge. Appellant Byrne, Inc., which operates under the name RE/MAX International Relocation Services, Inc. (hereafter RE/MAX), appeals from a summary judgment ordering it to specifically perform a contract to buy property from appellees. We reverse and remand.

On May 21, 1997, RE/MAX entered into a contract with Huntco Steel, Inc., to provide relocation services for Huntco's employees. Under the terms of the contract, when so authorized by Huntco, RE/MAX would obtain an appraisal value of the employee's home and prepare a marketing-strategy report, recommending to the employee the list price of the home and strategies for obtaining a fair market value for the home. Then, RE/MAX would send the employee a contract of sale and other documents, offering to purchase at the appraised value. Upon receipt of the executed documents from the employee, RE/MAX would take the home into its "inventory" and list it for sale on the open real-estate market. At that point, RE/MAX would submit to Huntco an invoice equal to 7% of the home's appraised value. An additional invoice for 4.5% of the appraised value would be sent to Huntco at the end of each quarter that the home remained in inventory. If the home was sold, RE/MAX would receive from Huntco reimbursement of certain costs, plus various fees.

Appellee Jackie Ivy was an employee of Huntco. On September 10, 2001, RE/MAX sent Ivy and his wife Connie a letter "offering to purchase" their home at its appraised value of $612,500. Attached to the letter was a warranty deed showing the Ivys as grantors and a blank line for the grantee; an irrevocable limited power of attorney and affidavit of delivery and acceptance of warranty deed, which basically stated that the deed to the Ivy property had been delivered to RE/MAX and that RE/MAX had the power to negotiate and deliver sales contracts and all other documents needed to close the sale of the property; and a contract of sale for the property.

The contract of sale provided that RE/MAX agreed "to purchase" and the Ivys agreed "to sell and convey to RE/MAX or its nominee" the Ivy home for $612,500. The Ivys' equity would

be paid to them based on a contract formula and based on "your company's relocation policy" after receipt by RE/MAX of all executed documents.

Paragraph 6(f) of the contract of sale is the clause at issue in this case. It reads:

> 6. EXPRESS CONDITIONS: As express conditions of this Contract, it is specifically understood and agreed that:
>
> . . . .
>
> f. RE/MAX is relying upon the Sellers' [Ivys']employer to make certain payments to it and, therefore, each and every obligation of RE/MAX under this contract is expressly contingent upon the Sellers' employer fulfilling all of its obligations to RE/MAX. Sellers agree that RE/MAX is released from any and all obligations of this Contract should the Sellers' employer fail to perform any of its duties with RE/MAX.

On September 12, 2001, the Ivys executed the deed, the power of attorney and affidavit of delivery, and the contract of sale. Thereafter, RE/MAX paid the Ivys $24,066.11 for their equity in the property and began making monthly mortgage payments on the home in the amount of $4,700.

On February 12, 2002, the Ivys received a letter from RE/MAX, stating that, as of February 6, 2002, "your employer is indebted to RE/MAX on your property in the amount of $70,437.50 in acquisition and quarterly deposits." The letter reminded the Ivys that the contract of sale was "expressly contingent upon your employer making certain payments to RE/MAX and fulfilling all of its obligations to RE/MAX." In light of Huntco's failure to pay, RE/MAX advised the Ivys that it would make no further payments on the property and demanded reimbursement of the equity and mortgage payments already made, a total of $55,858.81.

The Ivys filed suit on June 7, 2002, and alleged that they understood that the sale of their property to RE/MAX was complete. They demanded specific performance of the contract of sale. RE/MAX, relying on paragraph 6(f) of the contract, answered that, because Huntco did not make certain payments under

its contract with RE/MAX, RE/MAX was released from any and all obligations under its contract with the Ivys.

On October 25, 2002, the Ivys filed a motion for summary judgment, arguing that paragraph 6(f) of the contract was unenforceable due to vagueness. The trial court granted the motion for summary judgment, ruling that paragraph 6(f) was unenforceably vague and that, therefore, RE/MAX was not released from its obligation to purchase the Ivys' home. The court ordered RE/MAX to specifically perform the contract of sale to purchase the property, to pay the Ivys $58,694.62 to compensate them for the amounts they had paid on the house since February of 2002, and to pay the Ivys $7,206.25 in attorney fees. Following entry of a final order, RE/MAX filed a timely notice of appeal.

 The issue to be determined is whether paragraph 6(f) of the contract is so vague as to be unenforceable. The terms of a contract must be reasonably certain. *ERC Mortgage Group, Inc. v. Luper*, 32 Ark. App. 19, 795 S.W.2d 362 (1990). A contract is sufficiently certain if it provides a basis for determining the existence of a breach and for giving an appropriate remedy. *Ciba-Geigy Corp. v. Alter,* 309 Ark. 426, 834 S.W.2d 136 (1992). The law does not favor destruction of contracts because of uncertainty. *Id.* However, a court cannot enforce a contract that it cannot understand. *Barnes v. Barnes*, 275 Ark. 117, 627 S.W.2d 552 (1982).

 We do not believe paragraph 6(f) is incapable of being understood. It states clearly that RE/MAX is relying on Ivy's employer to make certain payments and that the contract is contingent on the employer fulfilling its obligations to RE/MAX. The clause also clearly states that RE/MAX will be released from its obligations under the contract of sale should the employer fail to perform its duties. Thus, although the clause does not state what particular duties are owed by Huntco to RE/MAX, it is clear enough to provide a basis for determining whether a breach occurred. As for the specific duties owed by the employer to RE/MAX, these are matters that may be ascertained by viewing the Huntco contract, *i.e.*, resorting to extrinsic evidence as is done in the case of ambiguous contracts. *See Stacy v. Williams*, 38 Ark. App. 192, 834 S.W.2d 156 (1992). Further, the supreme court stated in *Shibley v. White*, 193 Ark. 1048, 1052-53, 104 S.W.2d 461, 464 (1937):

> If, with the aid of the usual tests and principles of construction, the court is able to ascertain and to enforce the intention of the parties, their agreement will not be held uncertain.

*See also Dziga v. Muradian Bus. Brokers, Inc.*, 28 Ark. App. 241, 773 S.W.2d 106 (1989) (holding that absolute certainty is not required, and that that is certain which may be rendered certain); 1 Arthur Linton Corbin, CORBIN ON CONTRACTS § 4.1 at 543-44 (Rev. ed. 1993) (stating that extrinsic evidence may be sufficient to fill the gaps and to remove doubts in a contract).

Paragraph 6(f) of the contract of sale in this case is in the nature of a condition subsequent. Such a condition, which follows liability on a contract but provides for a contingency which, if it occurs, will defeat a contract already in effect, is a condition subsequent. *See Nichols Bros. Investments v. Rector-Phillips-Morse, Inc. and Bill Haupt*, 33 Ark. App. 47, 801 S.W.2d 308 (1990) (citing 17 Am. Jur. 2d *Contracts* § 323 (1964)). Here, the intention of the parties to this contract was clearly expressed. Appellees agreed to release appellant from all obligations of the contract should appellee's employer fail to perform its duties to appellant. The condition made is aleatory, but that does not affect its validity or enforceability. An aleatory contract is defined as "a mutual agreement, of which the effects, with respect both to the advantages and losses, whether to all the parties or to some of them, depend on an uncertain event." Black's Law Dictionary 70 (6th ed. 1990). The trial court found the paragraph to be "unenforceably vague"; however, the paragraph imposes no obligations or duties upon the parties to be enforced or that either of the parties could breach. It merely identifies the condition subsequent that relieves RE/MAX of further obligations under the contract. Whether or not the condition subsequent occurred was a question of fact; thus, summary judgment was inappropriate in this case.

Reversed and remanded.

HART and NEAL, JJ., agree.